1   Michael B. Reynolds, Bar No. 174534
    mreynolds@swlaw.com
2   Colin R. Higgins, Bar No. 268364
    chiggins@swlaw.com
3   Cameron J. Schlagel, Bar No. 320732
    cschlagel@swlaw.com
4   SNELL & WILMER L.L.P.
    600 Anton Blvd., Suite 1400
5   Costa Mesa, California 92626-7689
    Telephone:  714.427.7000
6   Facsimile:   714.427.7799

7   Attorneys for Plaintiffs

8

9                  UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12  SO CAL TOP GUNS, INC., a            Case No.  2:22-at-819
    California nonprofit public benefit
13  corporation; SAFARI CLUB
    INTERNATIONAL, an Arizona           **COMPLAINT FOR**
14  nonprofit corporation; THE UNITED   **DECLARATORY AND**
    STATES SPORTSMEN'S                  **INJUNCTIVE RELIEF**
15  ALLIANCE FOUNDATION, an
    Ohio nonprofit corporation; and
16  CONGRESSIONAL
    SPORTSMEN'S FOUNDATION,

17                        Plaintiffs,

18  v.

19  ROB BONTA, in his official
    capacity as Attorney General of the
20  State of California; and DOES 1-25,
    inclusive,

21

22                        Defendants.

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs So Cal Top Guns, Safari Club International, and The United States Sportsmen's Alliance Foundation (jointly, "Plaintiffs"), through their counsel, bring this action against Defendant Rob Bonta, in his official capacity as Attorney General of the State of California ("Defendant"), and make the following allegations:

**INTRODUCTION**

1. California has for years attempted to unconstitutionally regulate firearm industry members' First Amendment right to engage in truthful marketing and advertising concerning lawful products and services. Indeed, this Court previously invalidated California's attempt to regulate firearm industry members' constitutionally protected speech in 2018. *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007 (E.D. Cal. 2018). This action is the next chapter in that ongoing saga.

2. Through this Complaint, Plaintiffs seek to have declared and adjudged unconstitutional, and to enjoin the enforcement of, California Business & Professions Code section 22949.80 ("Section 22949.80"), added by Assembly Bill 2571 ("AB 2571"), 2022 Cal. Stats., Ch. 77, § 2, which prohibits "firearm industry members," like Plaintiffs, from advertising or marketing any firearm-related product in a manner that is "designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). On its face and as applied, Section 22949.80 violates the First, Fifth, and Fourteenth Amendments to the United States Constitution.

3. The sale, purchase, possession and lawful use of firearms and ammunition is not only legal—it is constitutionally protected by the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 616–19 (2008); *Jones v. Bonta*, 34 F.4th 704, 715–16 (9th Cir. 2022); *Bauer v. Becerra*, 858 F.3d 1216, 1222–23 (9th Cir. 2017). The Second Amendment likewise protects the right

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

1   of minors to bear arms and maintain proficiency in their use, subject to limited and

2   well-established historical regulations such as those requiring adult approval and

3   supervision.  *See Jones*, 34 F.4th 720–23 (finding that "young adults have Second

4   Amendment protections");  *Ezell v. City of Chicago*, 846 F.3d 888, 896 (7th Cir.

5   2017) (recognizing that teenagers have these rights under the Second Amendment);

6   *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2127, 2129–

7   30 (2022) (Second Amendment codifies a "pre-existing right" and is subject to text-

8   and-history scrutiny).

9          4.     The First Amendment, in turn, protects both pure ideological and

10  political speech, as well as honest, nonmisleading commercial speech promoting

11  lawful products or services, especially when the products or services are themselves

12  protected by the Constitution.  *See, e.g.*, *Bolger v. Youngs Drug Prods.*, 463 U.S.

13  60, 69 (1983) (invalidating ban on mailing contraceptive advertisements because

14  such advertising related to constitutionally protected activity).  Even if California

15  believes that minors' exposure to firearm-related advertising may sometimes have

16  negative consequences, "the 'fear that people would make bad decisions if given

17  truthful information' cannot justify content-based burdens on speech." *Sorrell v.*

18  *IMS Health Inc.*, 564 U.S. 552, 575–76 (2011).

19         5.     Section 22949.80 imposes unconstitutional content- and speaker-based

20  restrictions on protected speech that, in practice, are viewpoint-discriminatory and

21  heavily burden the rights of "firearm industry members" to advertise accurate

22  information about programs promoting the use of firearms and firearm-related

23  services, such as instruction and education.

24         6.     Furthermore, because law-abiding young adults have a right to bear

25  arms and maintain proficiency in their use—rights guaranteed by the Second

26  Amendment—the First Amendment prevents California from enforcing Section

27  22949.80's ban on advertising firearm-related products to minors.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

7.     Section 22949.80 also prohibits Plaintiffs from advertising their firearm-related programs, where Plaintiffs peacefully and lawfully assemble and associate with each other and other members, including minors.  That prohibition infringes on Plaintiffs' First Amendment rights to free association and assembly. *See NAACP v. Patterson*, 357 U.S. 449, 462 (1958).

8.     Likewise, because Section 22949.80's ban on advertising prohibits a substantial amount of protected speech, it is facially invalid under the First Amendment overbreadth doctrine.  *See United States v. Williams*, 553 U.S. 285, 292 (2008).

9.     Putting the facial overbreadth of Section 22949.80's ban aside, the statute is unduly vague in violation of the Constitution's due process guarantee.

10.     The Constitution requires laws to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).  Further, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.*  A law is unconstitutionally vague when it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Id.* (footnotes omitted).

11.     Section 22949.80 is unduly vague in multiple respects.  For example, its definition of the term "marketing or advertising" includes not only advertising communications that propose an economic transaction, like the purchase of a firearm, but also any communication made in exchange for monetary compensation by a "firearm industry member" to encourage "recipients of the communication to purchase *or use* the product *or service*." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6) (emphasis added).  Moreover, Section 22949.80 impermissibly delegates to "a court" the determination, on an ad hoc and subjective basis, of whether a marketing or advertising communication "reasonably appears to be attractive to

- 4 -

minors," without providing an explicit standard for application of the law. Instead, Section 22949.80(a)(2) mandates a "totality of the circumstances test" that includes consideration of six *non-exclusive*, subjective factors. *Id.* § 22949.80(a)(2). That test alone renders the statute unconstitutionally vague in all of its applications.

12. Finally, Section 22949.80 violates the Fourteenth Amendment's guarantee of equal protection of the laws because it is a viewpoint-discriminatory and animus-based prohibition against Plaintiffs' constitutionally protected speech that does not serve any compelling government interest.

13. Plaintiffs therefore seek a declaration that Section 22949.80 violates Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments, and an injunction prohibiting enforcement of the unconstitutional statute.

## JURISDICTION AND VENUE

14. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' First through Sixth Claims for Relief arise under the Constitution and laws of the United States and, thus, present federal questions. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges, or immunities secured by the United States Constitution.

15. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

16. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiffs' claims for relief occurred in this district. Venue is also proper in this district under 28 U.S.C. §§ 1391 because the venue rules of the State of California specifically would permit this action to be filed in

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  Sacramento County because the Attorney General and California Department of

2  Justice ("Cal DOJ") maintain an office within Sacramento County.  *See* Cal. Civ.

3  Proc. Code § 401(1).

4

5                          **PARTIES**

6                    ***Plaintiff SoCal Top Guns***

7      17.    Plaintiff So Cal Top Guns ("SCTG") is an I.R.C. § 501(c)(3)

8  California nonprofit corporation with its principal place of business in the County

9  of Orange, California.

10      18.    SCTG's mission is to establish, maintain, and administer a youth

11  shooting program in California that promotes firearm safety awareness and

12  competition in youth shooting competitions at the local, state, regional, and national

13  levels.

14      19.    SCTG's youth shooting programs emphasize firearm safety,

15  responsible handling of firearms, proper shooting techniques, and improving

16  participants' shooting skills.

17      20.    To that end, SCTG currently offers weekly and six-week shotgun

18  shooting programs for youths ages 10 to 17.  The cost of the program is $60 per

19  week or $300 for the six-week course.

20      21.    SCTG's youth shooting program is conducted at a licensed shooting

21  range located in Corona, California, where "firearm-related products" are sold and

22  used.

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

- 6 -

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

22. SCTG's official logo, which appears on SCTG's website and in its marketing materials related to the youth shooting program, is a cartoon graphic of a grimacing clay pigeon accompanied by the text "So Cal Top Guns Inc., Youth Shooting Program":



23. In connection with the advertising and marketing of its youth shooting program, SCTG publishes photographs from its events on its public website, such as the following examples:

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7210
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF







24.     SCTG also regularly markets and advertises special events, such as its "Shooting to Cure ALS" event:

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF



*Plaintiff Safari Club International*

25.    Plaintiff Safari Club International ("<u>SCI</u>") is a nonprofit I.R.C. § 501(c)(4) corporation incorporated in Arizona.  Founded in Los Angeles, California, and headquartered in Washington, D.C., SCI has approximately 45,000 members and 200 chapters throughout the U.S. and in more than 100 other countries.  SCI has nine chapters in the State of California and approximately 10% of SCI's members live in California.

26.    SCI's mission is to protect the freedom to hunt and promote wildlife conservation worldwide.  SCI informs and educates the public concerning hunting and related activities and supports education programs on wildlife conservation,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

ecology, and natural-resource management.  SCI prides itself for being a leader in educating elected officials and policymakers on the essential role of hunting in science-based management of wildlife and habitat.

27.     Through its youth memberships, SCI provides programs and resources designed to educate youth on the role of hunting in the management and conservation of wildlife.  SCI and its sister organization, Safari Club International Foundation, support youth education programs that reinforce these principles.

28.     SCI publishes three separate magazines and journals that are distributed to its members across the United States, including California.

29.     "SCI News" is a bi-weekly digest of SCI, delivering hunting news, conservation stories, and highlights of SCI's activities to SCI members.

30.     "Safari Magazine," SCI's award-winning flagship publication, delivers hunting stories from around the world to SCI members on a bi-monthly basis. Safari Magazine contains additional articles and columns reflecting the overall lifestyle of active outdoorsmen and women containing a broad mix of hunting, fishing, gun and product reviews, wildlife art, international travel, and more.

31.     "Safari Times" is a monthly newspaper that presents information and stories concerning hunters' rights, national and international advocacy efforts, and news.  Local SCI Chapter activities are featured, as well as education, conservation, and wildlife management efforts.

32.     SCI's member publications regularly feature marketing and advertising, including by other "firearm industry members," concerning various firearm-related products, services, and activities, as well as articles, photographs, and other media discussing and depicting youth engagement in conservation activities, including hunting with firearms.  In addition, SCI promotes the use and ownership of firearm-related products through its litigation activities.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**_Plaintiff The United States Sportsmen's Alliance Foundation_**

33.    Plaintiff The United States Sportsmen's Alliance Foundation ("Sportsmen's Alliance") is an Ohio nonprofit corporation headquartered in Columbus, Ohio.  Sportsmen's Alliance is, and at all times relevant hereto was, registered in the State of California as an out of state nonprofit corporation.

34.    With the support of thousands of members and donors nationwide, Sportsmen's Alliance works to protect and advance our nation's outdoor heritage of hunting, fishing, trapping, and shooting in all 50 state legislatures.

35.    Among other activities, Sportsmen's Alliance organizes, sponsors, and administers youth-oriented conservation programs and courses, including in California.

36.    In 2001, Sportsmen's Alliance created the _Trailblazer Adventure_ program, a youth-oriented program designed to reach a new generation of hunters and anglers by introducing youth and their families to an outdoor lifestyle.  The _Trailblazer Adventure_ program served 2 million participants across the nation.

37.    Sportsmen's Alliance expanded its work to attract new conservationists through the development of the _Families Afield_ program.  The hallmark of the _Families Afield_ program is a "try before you buy" approach that allows new hunters to obtain an apprentice license and hunt under the watchful eye of an experienced hunter before taking a hunter education course.  The program has been implemented in 42 states and surpassed 2.5 million apprentice hunting licenses sold.  Through its continued advocacy and with the support of its members and donors, Sportsmen's Alliance desires to grow the _Families Afield_ program to additional states, including California.

38.    Most recently, in 2020, Sportsmen's Alliance launched the _Conservation Adventures_ program, which aims to address critical gaps in education concerning wildlife and habitat conservation; specifically, the North American Model of Conservation.  The goal of _Conservation Adventures_ is to implement a

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

conservation-based educational curriculum in high schools across the country.  This includes discussions held with supporters and other interested parties to begin implementation in California; however, Sportsmen's Alliance has put this initial planning on hold out of fear that such activities *might* be prohibited by Section 22949.80.  This curriculum includes training modules, chapters, and discussions of hunting, firearm use, the shooting sports, and their beneficial impact on fish and wildlife conservation nationwide.

39.    In support of its mission, Sportsmen's Alliance publishes "The Sportsmen's Advocate," the official magazine of Sportsmen's Alliance, which is distributed to Sportsmen's Alliance members and supporters across the country, including in California.[1]

40.    The Sportsmen's Advocate and other Sportsmen's Alliance publications regularly contain marketing and advertising of firearm-related products as well as articles, photographs, and other media discussing and depicting youth engagement in conservation activities, including hunting with firearms and the shooting sports.

### *Plaintiff Congressional Sportsmen's Foundation*

41.    Plaintiff Congressional Sportsmen's Foundation ("CSF") is a nonprofit I.R.C. § 501(c)(3) corporation incorporated in Washington, DC, and is registered and licensed as a charity organization to do business in all 50 states, including California.

42.    Founded in 1989, CSF's mission is to work with Congress, governors, and state legislatures, including the California State Legislature, to protect and advance hunting, angling, recreational shooting and trapping.

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

---

[1] The Spring 2022 Issue of The Sportsmen's Advocate is available at https://viewer.joomag.com/the-sportsmens-advocate-spring-2022/0787524001652115806?short&.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

43.     CSF provides support and guidance for three distinct caucuses operating at the Federal and State level.

44.     With nearly 250 members, the bipartisan Congressional Sportsmen's Caucus has grown into one of the largest and most effective caucuses in the US Congress.  The caucus is the sportsmen's ally and first line of defense in Washington protecting and advancing hunting, angling, recreational shooting and trapping.

45.     The Governors Sportsmen's Caucus is a bipartisan caucus of governors working to protect and advance the interests of America's sportsmen and women, and advance professional fish and wildlife management policy.  The 30 members of the bipartisan Governors Sportsmen's Caucus facilitate communication and information exchange between state executives in support of legislation and regulations that protect and advance hunting, angling, recreational shooting and trapping.

46.     Forty-nine state caucuses and over 2,000 state legislators are united under the bipartisan National Assembly of Sportsmen's Caucuses ("NASC") umbrella.  The NASC facilitates the interaction and idea exchange among state caucus leaders and the outdoor community.  NASC provides a host of services including: providing detailed information on sportsmen's issues, writing caucus press releases, organizing an annual meeting, and coordinating the exchange of information and interaction between the individual state caucuses.  Through its communication network and by fostering interaction among legislators, sportsmen's groups, industry partners, state fish and wildlife agencies and the media, NASC provides the foundation structure necessary to protect and advance hunting, angling, recreational shooting, trapping, and professional fish and wildlife management in state capitols.

47.     Together with the Congressional Sportsmen's Caucus, the Governors Sportsmen's Caucus, and the National Assembly of Sportsmen's Caucuses, CSF

- 13 -

1   serves an unprecedented network of pro-sportsmen elected officials who advance
2   the interests of America's hunters and anglers.

3      48.   Among other caucuses in state legislatures across the country, CSF
4   works closely with California's Outdoor Sporting Caucus.

5      49.   As part of its support of the California Outdoor Sporting Caucus, CSF
6   hosts an annual California Outdoor Sporting Caucus Trap and Skeet Shoot at the
7   Yolo Sportsmen's Club in Davis, California.  This trap shoot features "firearm
8   industry members" and is regularly attended by youth shooting groups, along with
9   legislators and legislative staff.

10      50.   CSF also regularly hosts fundraising events in California, as it does in
11   many states, that involve firearms and may be attended by minors.

12      51.   In support of its mission, CSF publishes a quarterly "Outdoor Heritage
13   Report" that includes news and updates on hunting and shooting sports, a weekly
14   newsletter titled "The Sportsmen's Voice" with updates on legislation and policy,
15   and regularly utilizes social media to share these highlights.  These CSF
16   publications regularly contain marketing and advertising by "firearm industry
17   members," as well as articles, photographs, and other media discussing and
18   depicting youth engagement in conservation activities, including hunting with
19   firearms and the shooting sports.  The distribution for these publications reaches
20   throughout the nation, including many individuals in California.

21

22                    ***Defendant Attorney General Rob Bonta***

23      52.   Defendant Rob Bonta is the Attorney General of the State of
24   California.  He is the chief law enforcement officer of California.  As Attorney
25   General, Defendant Bonta is charged by Section 13 of Article V of the California
26   Constitution with the duty to see that the laws of the state are uniformly and
27   adequately enforced.  Attorney General Bonta is the head of the Cal DOJ.  As head
28   of the Cal DOJ, Defendant Bonta is responsible for the creation, implementation,

- 14 -

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

execution, and administration of the laws, regulations, customs, practices, and policies of the Cal DOJ.  Plaintiffs are informed and believe that Defendant Bonta is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action.  Defendant Bonta is sued in his official capacity.

53.    Plaintiffs do not know the true names or capacities of the defendants sued herein as DOES 1-25, inclusive, and will amend this Complaint to allege such facts as soon as they are ascertained.  Plaintiffs are informed and believe that Bonta and the defendants named herein as DOES 1-25, and each of them, are and acted as the agents of each other with respect to the actions alleged herein.

## GENERAL ALLEGATIONS

54.    Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

### *California's Laws Regarding Minors and Firearms*

55.    California law restricts the possession, use, and acquisition of firearms by minors.  *See* Cal. Penal Code §§ 29610–29750.

56.    While California's restrictions on firearm possession by minors may appear broad, they are limited by a non-exhaustive list of statutory exceptions authorizing a variety of lawful uses and, moreover, the constitutional right to keep and bear arms for lawful purposes.

57.    For example, the California Legislature has explicitly stated that its enactment of laws restricting firearm possession by minors—e.g., restrictions on loaning a firearm to a minor, *see* Cal. Penal Code § 27505—is not intended "to expand or narrow the application of existing statutory and judicial authority as to the rights of minors to be loaned or to possess live ammunition or a firearm for the purpose of self-defense or the defense of others."  Cal. Penal Code § 29750(b).

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

- 15 -

1    Thus, California law clearly recognizes the *pre-existing* constitutional right of

2    minors to possess and use firearms for self-defense and defense of others.

3         58.    Notwithstanding, current California law purports to otherwise prohibit

4    minors from possessing handguns and semiautomatic centerfire rifles (and

5    beginning July 1, 2023, any type of firearm).  Cal. Penal Code § 29610.  Minors

6    also cannot possess live ammunition.  *Id.* § 29650.

7         59.    The exceptions to these restrictions, however, are numerous and non-

8    exhaustive.  Common to all the exceptions is that the minor be engaged in, or be in

9    direct transit to or from, "a lawful, recreational sport" which includes, "but is not

10   limited to, competitive shooting, or agricultural, ranching, or hunting activity or

11   hunting education, or a motion picture, television, or video production, or

12   entertainment or theatrical event, the nature of which involves the use of a firearm."

13   Cal. Penal Code § 29615 (exceptions for possession of firearms); *id.* § 29655

14   (exceptions for possession of live ammunition).

15        60.    Some of the exceptions to California's restrictions on firearm

16   possession by minors do not require the presence of a parent or legal guardian.  For

17   example, when the minor has the express written permission of their parent or legal

18   guardian to possess a firearm.  *See, e.g.*, Cal. Penal Code § 29615(c)–(e).

19        61.    California also prohibits any "person, corporation, or firm" from

20   selling, loaning, or transferring a firearm to a minor, or selling a handgun to an

21   individual under 21 years of age, except in certain circumstances.  Cal. Penal Code

22   § 27505.

23        62.    As it concerns laws restricting the "loan" of a firearm to a minor, the

24   applicable exceptions first look to the relationship of the person to the minor (i.e.,

25   whether they are the parent/legal guardian or someone else) and the type of firearm

26   being loaned (e.g., whether it is a semiautomatic centerfire rifle, handgun, some

27   other type of firearm).  *See* Cal. Penal Code § 27505(b)(2)–(5).  Notably, the law

28   makes clear the minor need not always be accompanied by a parent, legal guardian,

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1   or responsible adult.  And all the exceptions contain the same "lawful, recreational

2   sport" language as above.

3

4                                         ***AB 2571***

5          63.    On June 30, 2022, "to further restrict the marketing and advertising of

6   firearms to minors," the California Legislature passed, and Governor Newsom

7   signed into law, AB 2571 as an "urgency statute necessary for the immediate

8   preservation of the public peace, health, or safety," meaning the statute took effect

9   immediately.  2022 Cal. Stats., Ch. 77, §§ 1(b) & 3.  A true and correct copy of AB

10  2571 is attached hereto as **Exhibit 1**.

11         64.    Section 22949.80—added to California's Business & Professions

12  Code by AB 2571—makes it unlawful for any "firearm industry member" to

13  "advertise, market, or arrange for placement of an advertising or marketing

14  communication concerning any firearm-related product in a manner that is

15  designed, intended, or reasonably appears to be attractive to minors."  Cal. Bus. &

16  Prof. Code § 22949.80(a)(1).

17         65.    Section 22949.80 also generally prohibits firearm industry members

18  from collecting, using, or disclosing a minor's personal information for the purpose

19  of advertising, or allowing a third-party to do so.  *See id.* §§ 22949.80(b) & (d).

20         66.    The term "firearm accessory," for the purposes of Section 22949.80,

21  means "an attachment or device designed or adapted to be inserted into, affixed

22  onto, or used in conjunction with, a firearm which is designed, intended, or

23  functions to alter or enhance the firing capabilities of a firearm, the lethality of the

24  firearm, or a shooter's ability to hold, carry, or use a firearm."  *Id.* § 22949.80(c)(3).

25         67.    As used in Section 22949.80, the term "firearm industry member"

26  means either:

27                (A) A person, firm, corporation, company, partnership,
                society, joint stock company, or any other entity or
28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
———— L.L.P. ————
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products. [or]

(B) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i) Advertises firearm-related products.

(ii) Advertises events where firearm-related products are sold or used.

(iii) Endorses specific firearm-related products.

(iv) Sponsors or otherwise promotes events at which firearm-related products are sold or used.

*Id.* § 22949.80(c)(4).

68.    The statute defines "firearm-related product" as follows:

[A] firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions:

(A) The item is sold, made, or distributed in California.

(B) The item is intended to be sold or distributed in California.

(C) It is reasonably foreseeable that the item would be sold or possessed in California.

(D) Marketing or advertising for the item is directed to residents of California.

*Id.* § 22949.80(c)(5).

69.    The phrase "marketing or advertising" means:

[I]n exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

about a product *or service* the primary purpose of which is to encourage recipients of the communication to purchase *or use* the product *or service.*

*Id.* § 22949.80(c)(6) (emphasis added).

70.     The term "minor" for the purposes of Section 22948.80 means a "natural person under 18 years of age who resides in" California.  *Id.* § 22949.80(c)(7).

71.     The determination of whether "marketing or advertising of a firearm-related product is attractive to minors"—and, thus, whether a particular marketing or advertising violates Section 22949—is delegated the "court[s]," which the statute directs to consider:

> [T]he totality of the circumstances, including, but not limited to, whether the marketing or advertising:
>
> (A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.
>
> (B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.
>
> (C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.
>
> (D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.
>
> (E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.
>
> (F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

72.     Violations of Section 22949.80 are punishable by a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, assessed and recovered through a civil action brought by the Attorney General or by any district attorney, county counsel, or city attorney. *Id.* § 22949.80(e)(1).

73.     Section 22949.80 also authorizes: a private right of action by any "person harmed by a violation" of the statute, *id.* § 22949.80(e)(3); injunctive relief, *id.* § 22949.80(e)(4); and an award of attorney's fees and costs, but only to *a plaintiff* who prevails in a civil action under the statute, *id.* § 22949.80(e)(5).

74.     Section 22949.80 does not authorize an award of attorney's fees and costs, including expert witness fees and other litigation expenses, to a defendant who is a prevailing party in an action brought pursuant to Section 22949.80—even if such an action is frivolous or without merit. *Id.* § 22949.80(e)(5). This feature of the statute is intended to incentivize private actions against Plaintiffs and similar organizations and to discourage Plaintiffs from exercising their constitutional rights.

75.     On its face, Section 22949.80 restricts nonmisleading, lawful commercial speech concerning lawful activities and services, including advertisements for youth shooting competitions, youth recreational shooting and outdoor events, firearm and hunter safety courses, shooting skills courses, and youth organization shooting and hunting programs.

76.     On its face, Section 22949.80 broadly prohibits pure speech, including, but not limited to, the following:

        (a)     All (or nearly all) aspects of youth hunting and shooting magazines and the websites, social media, and other communications promoting those magazines;

        (b)     Articles, cartoons (including political cartoons), and photographs promoting or depicting the use of "firearm-related

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

- 20 -

products" by minors in magazines intended for a broader audience including adults;

(c)     Videos, cartoons, coloring books, posters, social media posts, and youth education campaigns by gun rights organizations and/or firearms trainers encouraging youth to take up lawful recreational or competitive shooting activities or teaching about firearm safety;

(d)     Branded merchandise, giveaways, or "swag"—including, but not limited to, t-shirts, hats, other clothing, stickers, pins, buttons, toys, games, and stuffed animals—by a "firearm industry member" that promotes a "firearm industry member," including nonprofit Second Amendment organizations, or contains pro-firearm slogans and political messages;

(e)     Any communication by a "firearm industry member" that encourages the recipient of the communication to exercise their Second Amendment rights to purchase or use firearms or other firearm-related products generally, like coaching or speaking with youth about taking firearms training, becoming involved with a youth shooting team, or participating in a youth-oriented hunt;

(f)     Youth firearm and hunter safety courses and youth shooting skills courses, as well as recommendations or endorsements by firearms trainers concerning the most appropriate firearms, ammunition, and accessories for young and beginner shooters;

(g)     Signage, flyers, posters, discussions, branded merchandise and giveaways, and/or other communications generally depicting minors enjoying or otherwise encouraging minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes at youth recreational and competitive shooting events, as well as communications promoting such events; and

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

(h)     Communications soliciting funds for scholarships and grants for youth shooters and youth shooting teams.

### *California Government Agencies Promote the Second Amendment Rights of Minors*

77.     Certain California governmental agencies directly promote the interests of minors in exercising their Second Amendment rights by participating in firearms education courses, hunter safety education, and other firearm-related activities.

78.     For example, Plaintiffs are informed and believe, and on that basis allege, that on or about August 4, 2022, the California Department of Fish and Wildlife ("CDFW") sent an email to its subscribers announcing: "Junior [Hunting] License Holders: Applications Now Available for Fall Apprentice Deer Hunting in San Luis Obispo County," accompanied by the following photograph depicting a youth hunter:



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

79.     Likewise, on April 15, 2022, CDFW announced a return to in-person hunter education instruction, accompanied by the following photograph:[2]



80.     On September 4, 2018, CDFW celebrated youth hunting in the following message posted on its official Twitter page:[3]

---

[2] *California's In-Person Hunter Education Instruction Returns; Online Courses Remain a Permanent Option*, CAL. DEP'T OF FISH & WILDLIFE (Apr. 15, 2022), *available at* https://wildlife.ca.gov/News/californias-in-person-hunter-education-instruction-returns-online-courses-remain-a-permanent-option.

[3] *Available at* https://twitter.com/CaliforniaDFW/status/1037058628992126976?s=20&t=DuAyft H3Zto6uoF6RT7czg.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700



81.     Indeed, California incentivizes youth hunting by charging reduced rates for junior hunting licenses as compared to adult licenses.  California residents over the age of 16 pay $54 for a resident hunting license, whereas residents under the age of 16 pay only $14.30 for a junior license.[4]

---

[4] Cal. Dep't of Fish & Wildlife, *Hunting Licenses and Tags* (last accessed July 29, 2022), *available at* https://wildlife.ca.gov/Licensing/Hunting#994192-items--fees.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

82.     The State likewise subsidizes junior big game tags.[5]  For example, a junior elk tag costs $23.50, whereas a residential (adult) elk tag costs $512.[6]

83.     CDFW also administers and promotes a program called "Recruitment, Retention and Reactivation" ("R3"), which is a Statewide plan focused on reversing the decline in hunting, fishing, and shooting sports participation.[7]  CDFW's R3 programs incorporate a youth hunting component.

84.     Among other goals, CDFW's "Statewide R3 Implementation Strategy" seeks to "[i]mprove marketing and outreach activities that support hunting, fishing, the shooting sports and foraging" by, *inter alia*:

> Creat[ing], support[ing] and promot[ing] marketing and outreach materials that more fully embrace the shooting sports—archery, target shooting, rifle, shotgun and pistol ranges, youth shooting leagues and activities—as worthwhile, important and valuable activities linked to hunting and hunter recruitment, retention and reactivation starting in July 2020.[8]

85.     As these examples demonstrate, California agencies like CDFW not only engage in the types of marketing and advertising that Section 22949.80 now unconstitutionally prohibits, but have an official strategy to promote the same marketing and advertising content.

---

[5] As distinguished from a general hunting license, which allows a hunter to participate in the activity of hunting in the State, a "game tag" is a specific license to hunt a particular species or type of game, such as deer or wild pigs.  A game tag often contains multiple legal conditions, such as being valid only for a particular sex of an animal, having particular dates for which it is legal, limiting the methods of harvest to certain firearms or other means (like archery), and being unavailable for purchase until the hunting season begins.  *See generally* Cal. Dep't of Fish & Wildlife, *Big Game Hunting Tags* (last accessed July 29, 2022), *available at* https://wildlife.ca.gov/Licensing/Hunting/Big-Game.

[6] *See Hunting Licenses*, *supra*, note 4.

[7] *See generally* Cal. Dept' of Fish & Wildlife, *Statewide R3 Implementation Strategy* (Dec. 2019) at 3, *available at* https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=177571&inline.

[8] *Id.* at 7.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

86.     Yet, Plaintiffs are informed and believe, and on that basis allege, that on or about July 8, 2022, the Deputy Director of CDFW, David Boss, explained in an email to CDFW employees and volunteers that "[a]s defined in AB 2571," neither CDFW nor its employees or volunteers are "firearm industry members." Deputy Director Boss continued to explain that CDFW's "Hunter Education Program and our [CDFW's] instructors when operating on behalf of [CDFW] are not operating in a capacity as a firearm industry member."

### *Effects of Section 22949.80 on Plaintiffs' Constitutionally Protected Conduct*

87.     Plaintiffs regularly "advertise, market, or arrange for placement of an advertising or marketing communication concerning . . . firearm-related product[s] in a manner that is designed, intended, or [might] reasonably appear[] to be attractive to minors."  Cal. Bus. & Prof. Code § 22949.80(a)(1).

88.     Plaintiffs plan, advertise, market, promote, sponsor, host, and/or facilitate lawful events, competitions, trainings, educational programs, safety courses, and/or gun shows, specifically for youth or where youth are likely to be in attendance and where youth lawfully use, handle, observe, and/or otherwise possess firearms, ammunition, and/or firearm parts.

89.     In addition, Plaintiffs widely distribute printed and electronic communications promoting their events and programs.  Such communications regularly include images and/or depictions of minors handling or "using firearm-related products."

90.     Plaintiffs' lawful activities regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors exercising, or otherwise encouraging minors to exercise, their Second Amendment right to possess and use lawful firearms for lawful purposes, including hunting, recreational and competitive shooting, and firearm safety training.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

91.     Plaintiffs' lawful activities also sometimes include vendors or exhibitors who, among other things:  Promote membership or financial support of their organization; sell or distribute branded merchandise or merchandise with pro-firearm slogans and other political messages; disseminate books, pamphlets, coloring books, flyers, and other communications promoting the use of firearms and related products generally, hunting with firearms, the Second Amendment, firearm safety, and recreational or competitive shooting programs; or sell or advertise for sale firearms and related products and services.

92.     Plaintiffs desire to advertise, market, or arrange for placement of advertising or marketing communications concerning firearm-related products that on their face would violate Section 22949.80, specifically advertising and marketing communications that are intended to encourage minors to exercise their Second Amendment right to possess and use lawful firearms for lawful purposes, including hunting, recreational and competitive shooting, and firearm safety training.

93.     Although Plaintiffs believe the provisions of Section 22949.80 that prohibit Plaintiffs from advertising or marketing firearm-related products in a manner that may be attractive to minors are unconstitutional on their face, Plaintiffs fear that engaging in such advertising or marketing communications will result in enforcement actions against Plaintiffs by Defendant, and/or expose Plaintiffs to liability in private civil actions authorized by Section 22949.80, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities.

94.     Plaintiffs also desire to advertise, market, or arrange for placement of advertising or marketing communications concerning firearm-related products where it is unclear whether the communications violate the prohibitions of Section 22949.80.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

95. Although Plaintiffs believe that Section 22949.80, on its face and as applied, unconstitutionally fails to provide persons of ordinary intelligence adequate notice of what conduct is proscribed, Plaintiffs fear that engaging in any advertising or marketing communications where it is unclear whether the communications violate Section 22949.80 will result in enforcement actions against Plaintiffs by Defendant, and/or expose Plaintiffs to liability in private civil actions authorized by Section 22949.80, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities. Even if lacking merit, these civil actions could devastate Plaintiffs financially because the statute only provides for an award of fees and costs to prevailing plaintiffs.

96. Section 22949.80 thus has the practical effect of wiping out a vital outlet for the free exchange of ideas related to the lawful possession and use of lawful "firearm-related products" and for the promotion and preservation of the nation's historical tradition of firearms ownership and hunting heritage in California through the passing down of pro-Second Amendment attitudes and traditions to future generations.[9]

---

[9] Our nation's historical tradition of firearms ownership is widely discussed in the context of the Second Amendment. But our hunting heritage is often overlooked. Eighteenth century English law only allowed "'qualified'" individuals, i.e., people with enough land and money, to hunt. Michael C. Blumm & Lucus Ritchie, *The Pioneer Spirit and the Public Trust: The American Rule of Capture and State Ownership of Wildlife*, 35 ENVTL. L. 673, 683 (2005) (citation omitted). According to William Blackstone, this enabled feudalism to continue by keeping common people "'in as low a condition as possible, and especially to prohibit them the use of arms. Nothing could do this more effectually than a prohibition of hunting and sporting.'" Stephen P. Halbrook, *The Constitutional Right to Hunt: New Recognition of an Old Liberty in Virginia*, 19 WM. & MARY BILL RTS. J. 197, 200 (2010) (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES 413). Things were different on this side of the Atlantic Ocean. The 1641 Massachusetts Body of Liberties, the 1662 Connecticut Royal Charter, and the 1663 Royal Charter of Rhode Island and Providence Plantations provided their subjects with some hunting

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

97.    Indeed, as evidenced both on the face of Section 22949.80 and by the legislative history of AB 2571, this appears to be the purpose and intent of the law.

98.    For example, the Senate Judiciary Committee's June 10, 2022, "Bill Analysis of AB 2571" quotes heavily from the Violence Policy Center's ("VPC") 2016 report, "Start Them Young," which disparagingly "outlines the problem" of the "gun industry's" attempts to "attract future legal gun owners" as follows:

> The gun industry has long understood that it faces a slow-motion demographic collapse. With the industry's customer base growing older, household gun ownership in America has steadily declined. As its primary market of white males ages and dies off, the firearms industry has set its sights on America's children. Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products. Firearms companies have teamed up with "corporate partners" like the National Rifle Association of America, the gun industry's trade association the National Shooting Sports Foundation (NSSF), and online public-cations such as Junior Shooters in an industry-wide effort to market firearms to kids. They do this by promoting websites and magazines targeted at children, designing "kid-friendly" guns to appeal to the youth market, and even working to create the equivalent of "'reality' video" games to encourage gun use from an early age.
>
> The industry's focus on recruiting children into the gun culture has been acknowledged since at least the 1990s.[10]

and fishing rights.  Jeffrey Omar Usman, *The Game Is Afoot: Constitutionalizing the Right to Hunt and Fish in the Tennessee Constitution*, 77 TENN. L. REV. 57, 72–73 (2009).  William Penn attracted settlers to Pennsylvania by promoting the fact that settlers could hunt and fish there.  *Id*. at 73–74.  The tradition was so strong that there were rights to hunt and fish in the original Pennsylvania and Vermont Constitutions.  PA. CONST. OF 1776 § 43; VT. CONST. OF 1777 Ch. 2 § 67.

[10]    California Senate Judiciary Committee, AB 2571 (Bauer-Kahan) (June 14, 2022), attached as **Exhibit 2**, at 7–8 (quoting Josh Sugarman, Violence Policy Center, *"Start Them Young": How the Firearms Industry and Gun Lobby Are Targeting Your Children*, VPC (Feb. 2016), *available at* https://www.vpc.org/studies/startthemyoung.pdf (attached hereto as **Exhibit 3**)).

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

- 29 -

99.   The Senate Judiciary Committee's analysis continues, quoting a New York Times article lauding the VPC report:

> The gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles. And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age.
>
> The report, called "Start Them Young" and issued on Thursday by the Violence Policy Center, lists a variety of firearms meant at least partly for children. It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms. Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect. The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."
>
> Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant. The publisher of the books says Little Jake is actually older than he looks: "Little Jake is a fictional character in his late teens. While small in stature so that young children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."[11]

100.   It is thus clear that the California Legislature, in enacting AB 2571, understood the importance of engaging youth in hunting and the shooting sports for the preservation of the nation's historical tradition of firearms ownership and, in fact, intended AB 2571 to serve as a barrier to, and to chill, constitutionally protected conduct.  The intent of AB 2571, as evidenced by the legislative record, is not to keep unlawful firearms out of the hands of minors or to prevent unlawful use of firearms, but rather to prevent "firearm industry members"—which, as defined,

---

[11] Ex. 2 at 8–9 (quoting Anna North, *Marketing Guns to Children*, N.Y. TIMES (Feb. 19, 2022), *available at* https://archive.nytimes.com/takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children/ (attached hereto as **Exhibit 4**)).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

1  necessarily include pro-Second Amendment organizations, hunting conservation

2  organizations, and youth shooting programs—from "indoctrinating" youth to

3  become "advocates" for the Second Amendment and "gun culture."

4      101.   Likewise, shortly after signing AB 2571 into law, Governor

5  Newsom—the source of AB 2571, *see* Sen. Rules Comm., Bill Analysis Re: AB

6  2571 (Bauer-Kahan), 2021-2022 Reg. Sess., at 1 (Cal. 2022)—posted to his official

7  Twitter account a videotaped message to "the members of the United States

8  Supreme Court" and to "right-wing Republicans across this country," asking

9  rhetorically:

> Do you have no common decency, respect, or even
> common understanding that kids should not have one of
> these [referring to a semi-automatic rifle in his hands]?
> This is an AR-15. This is a weapon of war. A weapon of
> mass destruction. But you're out there promoting and
> allowing marketing of these weapons of war to our kids.
> Supporting and celebrating gun manufacturers who put up
> advertisements like the ones you see behind me. These are
> cartoon skulls will pacifiers in them. His and her pacifiers.
> Cartoon skulls of children with pacifiers. *That is what the
> right wing is marketing and promoting* at behest of the gun
> industry in this country. The good news, if there's any, is
> that this ends at least today in California. I just signed a
> bill, so the gun industry *and those that are backing this
> industry* can no longer market to our children. The idea that
> we even have to do this is ridiculous. This law, by the way,
> goes into effect immediately. Because *decent human
> beings, people with common sense, know that we should
> not be allowing this kind of disgusting marketing to go on
> another day*.[12]

---

[12] Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws Targeting Illegal Weapons, Marketing to Kids*, SACRAMENTO BEE (July 1, 2022), *available at* https://www.sacbee.com/news/local/crime/article263108183.html (the entire video of Governor Newsom's remarks is available on the Sacramento Bee website, as well as the official Twitter page of the Office of the Governor of California).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

102.   Accordingly, there is an actual, practical, and present need for declaratory and injunctive relief to ensure there is a clear determination of law that will resolve these disputes in a uniform manner and avert the potential imposition of improper and unconstitutional enforcement actions against Plaintiffs by Defendant, or civil actions against Plaintiffs by private parties, for allegedly violating the unconstitutional provisions of Section 22949.80.  As described above, Plaintiffs have declined to engage in certain advertising and marketing communications out of fear that engaging in such communications will result in enforcement and/or private civil actions against Plaintiffs, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities.  Plaintiffs have no adequate remedies at law and there is a present and immediate need for declaratory and injunctive relief.

### FIRST CLAIM FOR RELIEF –
### DECLARATORY AND INJUNCTIVE RELIEF
**Violation of First Amendment – Political and Ideological Speech**
**(U.S. Const., amends. I and XIV; 42 U.S.C. § 1983)**

103.   Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

104.   The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. CONST., amend. I.  It is incorporated and made applicable to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

105.   Political and ideological speech—including speech concerning "politics, nationalism, religion, or other matters of opinion"—has long been considered the core of the First Amendment.  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

106.   The First Amendment does not tolerate the suppression of speech that is, in someone's eyes, misguided, hurtful, or unpopular.  *See, e.g.*, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573 (1995); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).  Indeed, "above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

107.   "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991)).  Regulation of speech is content-based if the law "applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.*  That means a court must consider whether the regulation "'on its face' draws distinctions based on the message a speaker conveys."  *Id.*

108.   A content-based restriction that implicates political or ideological speech is generally subject to "strict scrutiny," meaning the government must show that the law is narrowly tailored to achieve compelling government interests.  *Reed*, 576 U.S. at 163; *see also Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790–91 (2011) (invalidating California law banning sale or rental of "violent video games" to minors).

109.   Commercial speech is no exception to this rule.  "Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional."  *Sorrell*, 564 U.S. at 566 (citing *Ward v. Rock Against Racism*,

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

- 33 -

491 U.S. 781, 791 (1989)); *see also Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429–30 (1993) (commercial speech restriction lacking a "neutral justification" was not content neutral).  Indeed, a "consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977).

110.   Defendants, acting under color of state law, are enforcing Section 22949.80, which infringes upon Plaintiffs' right to free speech secured by the First Amendment in violation of 42 U.S.C. § 1983.

111.   On its face and as applied, Section 22949.80 violates Plaintiffs' right to free speech under the First Amendment because it prohibits their political and ideological speech related to the lawful possession and use of firearms without any compelling governmental interest.

112.   It is evident from the plain text of Section 22949.80 and its legislative history that the statute's purpose is to thwart the promotion and preservation of nation's historical tradition of firearms ownership in California by prohibiting communications of pro-gun messages, attitudes, and traditions to future generations.

113.   Furthermore, on its face, Section 22949.80 does not apply to similar or opposing speech made by government agencies, businesses, organizations, or people who are not considered "firearm industry members."

114.   Section 22949.80 is, therefore, a "presumptively unlawful" content-based and viewpoint-discriminatory restriction of protected speech.  To justify such a restriction, the government must show that Section 22949.80 is narrowly tailored to achieve a compelling government interest.  *Reed*, 576 U.S. at 155.

115.   There is no compelling (or legitimate) government interest in banning Plaintiffs' pure speech concerning "firearm-related products."  California's purported interests in "ensuring that minors do not possess these dangerous weapons" and "protecting its citizens . . . from gun violence" are betrayed by the

- 34 -

fact that California does not directly ban the possession of many "firearm-related products" by minors for lawful purposes under a broad range of circumstances. Furthermore, California state agencies directly market and advertise firearm-related products and services to minors.

116.   Assuming *arguendo* that California's interests are compelling—though they are not—Section 22949.80 is neither narrowly tailored nor the least restrictive means of achieving those interests.  It encompasses *all* communications "concerning firearm-related products" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products and services, as well as communications that are equally attractive to adults who have a right to obtain information about those products and services. *See Wooley v. Maynard*, 430 U.S. 705, 716–17 (1977) ("The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose."); *United Transp. Union v. Michigan*, 401 U.S. 576, 581 (1971); *NAACP v. Button*, 371 U.S. 415, 433 (1963).

117.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to free speech, entitling them to declaratory and injunctive relief.  Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

118.   Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 violates the First Amendment to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1

**SECOND CLAIM FOR RELIEF –**

2

**DECLARATORY AND INJUNCTIVE RELIEF**

3

**Violation of First Amendment – Commercial Speech**

4

**(U.S. Const., amends. I and XIV; 42 U.S.C. § 1983)**

5      119.   Plaintiffs incorporate herein by this reference all preceding paragraphs

6    of this Complaint as if set forth in full.

7      120.   The First Amendment protects commercial speech—speech that "does

8    no more than propose a commercial transaction" or relates solely to the economic

9    interests of the speaker and audience—provided that it is not misleading and

10   concerns lawful activity.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,

11   447 U.S. 557, 563 (1980).

12     121.   "An offer to sell firearms or ammunition" is constitutionally protected

13   commercial speech.  *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009).

14     122.   The Second Amendment likewise protects the right of minors to bear

15   arms and maintain proficiency in their use, subject to limited and well-established

16   historical regulations such as those requiring adult approval and supervision.  *See*

17   *Jones*, 34 F.4th 720–23 (finding that "young adults have Second Amendment

18   protections"); *Ezell*, 846 F.3d at 896 (recognizing that teenagers have these rights

19   under the Second Amendment); *see also Bruen*, 142 S. Ct. at 2127, 2129–30.

20     123.   Government restrictions on protected commercial speech are

21   constitutional only if they directly advance a substantial government interest and

22   are not broader than necessary to serve that interest.  *Cent. Hudson*, 447 U.S. at

23   566; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553–54 (2001) (tobacco

24   marketing restrictions—even those purposed to protecting minors—must be the

25   narrowest means of achieving the asserted state interest); *Tracy Rifle & Pistol LLC*

26   *v. Harris*, 339 F. Supp. 3d 1007, 1018 (E.D. Cal. 2018) (invalidating California law

27   prohibiting the display of a handgun, an imitation handgun, or a placard advertising

28

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

the sale of a handgun in a manner that is visible from the outside of a gun dealer's premises).[13]

124.   Under the first criterion—the advancement of a substantial state interest—regulations that "only indirectly advance the state interest involved" have consistently been declared unconstitutional. *Cent. Hudson*, 447 U.S. at 564.  For example, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, the Court noted that "[t]he advertising ban does not directly affect professional standards one way or the other." 425 U.S. 748, 769 (1976).  Likewise, in *Bates v. State Bar of Arizona*, the Court invalidated an advertising prohibition designed to protect the "quality" of a lawyer's work, finding that "[r]estraints on advertising . . . are an ineffective way of deterring shoddy work." 433 U.S. 350, 378 (1977).

125.   The second criterion requires that speech restrictions be "narrowly drawn." *Cent. Hudson*, 447 U.S. at 565 (quoting *In re Primus*, 436 U.S. 412, 438 (1978)).  That means that the "regulatory technique may extend only as far as the interest it serves.  The State cannot regulate speech that poses no danger to the asserted state interest, [citation], nor can it completely suppress information when narrower restrictions on expression would serve its interest as well." *Id.* (citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 794–795 (1978)).

126.   The Supreme Court has consistently struck down broadly based bans on truthful, nonmisleading commercial speech, designed to serve ends unrelated to consumer protection. *44 Liquormart*, 517 U.S. at 497–98.  Although the Court has recognized that States may require commercial messages to "appear in such a form,

---

[13] Though this is currently the controlling test for so-called "commercial speech," modern case law is trending toward extending full First Amendment protection to all speech, including "commercial speech." *See Sorrell*, 564 U.S. at 566–67 (2011) (moving toward providing commercial speech the same level of heightened protection long accorded to political speech); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 523 (1996) (Thomas, J., concurring in part and concurring in judgment) ("I do not see a philosophical or historical basis for asserting that 'commercial' speech is of 'lower value' than 'noncommercial' speech.  Indeed, some historical materials suggest to the contrary.").

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

1   or include such additional information, warnings, and disclaimers, as are necessary

2   to prevent its being deceptive," *Va. Bd. of Pharmacy*, 425 U.S. at 772 n.24, the

3   State has far less regulatory authority "when its commercial speech restrictions

4   strike at 'the substance of the information communicated' rather than the

5   'commercial aspect of [it]—with offerors communicating offers to offerees.'" *44*

6   *Liquormart*, 517 U.S. at 498 (quoting *Linmark Assocs., Inc. v. Willingboro Twp.*,

7   431 U.S. 85, 96 (1977)).

8       127.   Defendants, acting under color of state law, are enforcing Section

9   22949.80, which infringes upon Plaintiffs' rights to free speech secured by the First

10  Amendment in violation of 42 U.S.C. § 1983.

11      128.   On its face and as applied, Section 22949.80 violates Plaintiffs' First

12  Amendment rights to free speech because it prohibits nonmisleading commercial

13  speech related to the lawful possession and use of lawful firearms without any

14  substantial governmental interest and is far more extensive than necessary to serve

15  any purported governmental interest.

16      129.   There is no substantial (or legitimate) government interest in banning

17  Plaintiffs' honest commercial speech concerning the lawful sale, possession, and

18  use of "firearm-related products."  California's purported interests in "ensuring that

19  minors do not possess these dangerous weapons" and "protecting its citizens . . .

20  from gun violence" are betrayed by the fact that California does not directly ban the

21  possession of many "firearm-related products" by minors for lawful purposes under

22  a broad range of circumstances.  Furthermore, California state agencies directly

23  market and advertise firearm-related products and services to minors. *Cf. Cent.*

24  *Hudson*, 447 U.S. at 564; *Va. Bd. of Pharmacy*, 425 U.S. at 769.

25      130.   Even if California's interests were substantial—though they are not—

26  Section 22949.80 is more extensive than necessary to achieve those interests.  It

27  encompasses *all* communications "concerning firearm-related products" made by

28  "firearm industry members" "in exchange for monetary compensation" that are

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

"designed, intended, or reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products and services, as well as communications that are equally attractive to adults who have a right to obtain information about those products and services. *See Cent. Hudson*, 447 U.S. at 565; *Bellotti*, 435 U.S. at 794–795; *see also Wooley,* 430 U.S. at 716–17 ("The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose."); *United Transp. Union*, 401 U.S. at 581; *Button*, 371 U.S. at 433.

131.   There are numerous alternatives to the "highly paternalistic approach" of Section 22949.80, including: "[T]o assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." *Va. Bd. of Pharmacy*, 425 U.S. at 770.

132.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to free speech, entitling them to declaratory and injunctive relief.  Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

133.   Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 violates the First Amendment to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

# THIRD CLAIM FOR RELIEF –
## DECLARATORY AND INJUNCTIVE RELIEF
### Violation of First Amendment – Association and Assembly
### (U.S. Const., amends. I and XIV; 42 U.S.C. § 1983)

134.  Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

135.  The First Amendment protects not only the right of free speech, but also "the right of the people peaceably to assemble." U.S. CONST., amend. I.  The right to assemble is closely associated, and often merges, with the right to free expression. *Buckley v. Valeo*, 424 U.S. 1, 25 (1976); *Shelton v. Tucker*, 364 U.S. 479, 486 (1960).  Indeed, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958).

136.  "Governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.* at 461–62; *see also Button*, 371 U.S. at 430 (invalidating statute that limited NAACP's solicitation of prospective litigants because such activity, for the purpose of furthering the civil-rights objectives of the organization, was within the right "to engage in association for the advancement of beliefs and ideas" (internal quotation marks and citations omitted)).

137.  Because the "threat of sanctions may deter" the exercise of First Amendment freedoms "as potently as the actual application of sanctions," government may regulate expressive and associational conduct "only with narrow specificity." *Button*, 371 U.S. at 433.

138.  In order to regulate or punish communications and activities protected by the First Amendment, the state must meet the affirmative burden of proving that the regulation is "necessary" to achieve a "compelling" and "legitimate" state interest, and the state's asserted justification must be subjected to "strict" and

- 40 -

1    "close" judicial scrutiny. *Id.* at 433, 438–39; *see also Buckley*, 424 U.S. at 25;

2    *NAACP v. Alabama*, 357 U.S. 449, 460–61 (1958).

3        139.   Defendants, acting under color of state law, are enforcing Section

4    22949.80, which infringes upon Plaintiffs' rights to freely associate and assemble

5    secured by the First Amendment in violation of 42 U.S.C. § 1983.

6        140.   On its face and as applied, Section 22949.80 is an unconstitutional

7    abridgement of Plaintiffs' rights to freely associate and assemble under the First

8    Amendment because it prohibits Plaintiffs from advertising marketing or arranging

9    for the placement of advertising or marketing concerning their various firearm-

10   related programs, where Plaintiffs peacefully and lawfully assemble and associate

11   with each other and members of the public, including youth.

12       141.   There is no compelling (or legitimate) government interest in

13   prohibiting "firearm industry members," like the Plaintiffs, from advertising,

14   marketing, or arranging for the placement of any advertising or marketing

15   communication concerning their firearm-related youth programming and services

16   and the "firearm-related products" used, sold, endorsed, recommended, or

17   advertised at such events—effectively putting an end to such events and, by

18   extension, the rights of Plaintiffs to associate and assemble at them. *See Button*,

19   371 U.S. at 433–34.

20       142.   Indeed, just the threat of hefty civil penalties under Section 22949.80,

21   coupled with the statute's breadth, has already deterred Plaintiffs from exercising

22   their First Amendment freedoms and is likely to deter similarly situated persons

23   from their exercise as potently as the application of those penalties. *See id.*

24       143.   Even if California's interests were compelling—though they are not—

25   Section 22949.80 is neither narrowly tailored nor the least restrictive means of

26   achieving those interests.  It encompasses *all* communications "concerning firearm-

27   related products" made by "firearm industry members" "in exchange for monetary

28   compensation" that are "designed, intended, or reasonably appear[] to be attractive

- 41 -

to minors"—even communications concerning lawful and constitutionally protected association and assembly. *See Button*, 371 U.S. at 433; *see also Wooley,* 430 U.S. at 716–17 ("The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose."); *United Transportation Union*, 401 U.S. at 581.

144.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to freely associate and assemble, entitling them to declaratory and injunctive relief. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

145.   Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 violates the First Amendment to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

## FOURTH CLAIM FOR RELIEF –
## DECLARATORY AND INJUNCTIVE RELIEF
### Violation of First Amendment – Overbreadth
### (U.S. Const., amends. I and XIV; 42 U.S.C. § 1983)

146.   Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

147.   Under the First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008).

148.   "An overbroad statute infringes on a substantial amount of constitutionally protected speech where there is 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

1   parties not before the Court,' or the statute is 'susceptible of regular application to

2   protected expression.'" *United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir.

3   2022).

4       149.   The First Amendment overbreadth doctrine is a departure "from the

5   traditional rule that a person may not challenge a statute on the ground that it might

6   be applied unconstitutionally in circumstances other than those before the court."

7   *Bates*, 433 U.S. at 380.  The reason is simple: "An overbroad statute might serve to

8   chill protected speech.  First Amendment interests are fragile interests, and a person

9   who contemplates protected activity might be discouraged by the in terrorem effect

10   of the statute." *Id.* (citing *Button*, 371 U.S. at 433).

11       150.   Defendants, acting under color of state law, are enforcing Section

12   22949.80, which infringes upon Plaintiffs' rights to free speech secured by the First

13   Amendment in violation of 42 U.S.C. § 1983.

14       151.   Section 22949.80 prohibits a substantial amount of lawful,

15   constitutionally protected speech.  It encompasses *all* communications "concerning

16   firearm-related products" made by "firearm industry members" "in exchange for

17   monetary compensation" that are "designed, intended, or reasonably appear[] to be

18   attractive to minors"—even communications concerning lawful and constitutionally

19   protected products and services, as well as communications that are equally

20   attractive to adults who have a right to obtain information about those products and

21   services.

22       152.   Additionally, in restricting advertising promoting the sale of "firearm-

23   related products" to minors, Section 22949.80 burdens a vast amount of pure

24   speech that is fully protected by the First Amendment.

25       153.   For example, Section 22949.80 bans advertising and marketing related

26   to youth shooting events, competitions, firearm safety programs, hunter's safety

27   programs, and shooting skills courses.  Regardless of the intent underlying Section

28   22949.80, the statute will have the effect of chilling constitutionally protected

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

speech and activities, such that, in practice, it will prohibit or discourage events including youth competitions, youth hunts, firearm safety programs, hunter's safety programs, and shooting skills courses, and will prevent firearms-related organizations from soliciting youth members through marketing and providing youth memberships.

154.   Due to Section 22949.80's overbreadth and vagueness, Plaintiffs have already started to curtail speech that *might* fall under Section 22949.80's overly broad ban.  This "chilling" of speech also offends the First Amendment.  *See, e.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611, 614–15 (1971); *Cox v. Louisiana*, 379 U.S. 536, 551–52 (1965); *Button*, 371 U.S. at 433.

155.   There is no compelling (or legitimate) government interest in banning Plaintiffs' speech concerning the lawful use of "firearm-related products." California's purported interests in "ensuring that minors do not possess these dangerous weapons" and "protecting its citizens . . . from gun violence" are betrayed by the fact that California state agencies directly market and advertise firearm-related products and services to minors; furthermore, California law does not directly ban the possession of many "firearm-related products" by minors for lawful purposes under a broad range of circumstances.

156.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to free speech, entitling them to declaratory and injunctive relief.  Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

157.   Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 violates the First Amendment to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Snell & Wilmer

L.L.P.

LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

**FIFTH CLAIM FOR RELIEF –**

**DECLARATORY AND INJUNCTIVE RELIEF**

**Violation of Fifth and Fourteenth Amendments – Void for Vagueness**

**(U.S. Const., amends. V and XIV; 42 U.S.C. § 1983)**

158.   Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

159.   The "void-for-vagueness doctrine" is an outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. *See Sessions v. Dimaya*, __ U.S. __, 138 S. Ct. 1204, 1212 (2018); *Williams*, 553 U.S. at 304.

160.   The doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes" and guards against arbitrary enforcement "by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Dimaya*, 138 S. Ct. at 1212.  "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned*, 408 U.S. at 108–09.

161.   A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304.

162.   A vague law is one that "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Grayned*, 408 U.S. at 108–09 (footnotes omitted); *see also Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974) (administrative rule penalizing "conduct unbecoming a member and detrimental to the service" was unconstitutionally vague because it did not create an objective standard of conduct); *Carter v. Welles-Bowen Realty, Inc.*, 719 F. Supp. 2d 846, 852 (N.D. Ohio 2010), *aff'd*, 736 F.3d 722 (6th Cir. 2013)

(Department of Housing and Urban Development's ten factor test for distinguishing "sham" and "bona fide" providers, for purposes of the exception to RESPA's prohibition against kickbacks and unearned fees for affiliated business arrangements, was void for vagueness because the factors themselves were vague, which was compounded by the inherently subjective balancing test).

163.   Section 22949.80 is unduly vague in multiple respects.  For example, its definition of the term "marketing or advertising" includes not only advertising communications that propose an economic transaction, like the purchase of a firearm, but also any communication made "in exchange for monetary compensation" by a "firearm industry member" to encourage "recipients of the communication to purchase *or use* the product *or service*."  Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6) (emphasis added).

164.   Moreover, Section 22949.80 impermissibly delegates to "a court" the determination, on an ad hoc and subjective basis, of whether a marketing or advertising "reasonably appears to be attractive to minors," without providing an explicit standard for application of the law.  Instead, Section 22949.80(a)(2) mandates a "totality of the circumstances test" that includes consideration of six *non-exclusive* factors.  That test is inherently subjective, which renders the statute unconstitutionally vague in all of its applications.

165.   Indeed, in similar circumstances, the Supreme Court has invalidated statutes that similarly prohibited conduct based on a completely subjective standard. *See, e.g.*, *Coates*, 402 U.S. at 614–15; *Cox*, 379 U.S. at 551–52; *Carter*, 719 F. Supp. 2d at 852–54.  The Supreme Court has likewise condemned broadly worded licensing ordinances which grant such standardless discretion to public officials that they are free to censor ideas and enforce their own personal preferences.  *See, e.g.*, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153–55, 158–59 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 322, 325 (1958); *Saia v. New York*, 334 U.S. 558, 560–62 (1948).

166.    Regardless of the intent underlying Section 22949.80, the statute is so vague that, in practice, it will act as a bar on events such as youth competitions, youth hunts, firearm safety programs, hunter's safety programs, and shooting skills courses, and will prevent firearms-related organizations from soliciting members through marketing to and providing memberships for minors.  Indeed, due to Section 22949.80's vagueness, Plaintiffs have already started to curtail all manner of speech that *might* fall under Section 22949.80's overly broad ban.

167.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional rights to free speech, due process, and equal protection, entitling them to declaratory and injunctive relief.  Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

168.    Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 is void for vagueness in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

## SIXTH CLAIM FOR RELIEF –
## DECLARATORY AND INJUNCTIVE RELIEF
### Violation of Fourteenth Amendment – Equal Protection
### (U.S. Const., amend. XIV; 42 U.S.C. § 1983)

169.    Plaintiffs incorporate herein by this reference all preceding paragraphs of this Complaint as if set forth in full.

170.    The Fourteenth Amendment, enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

171.    Singling out speakers because of the content of their speech also violates their fundamental rights under the Equal Protection Clause.  U.S. Const., amend. XIV.

172.    If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny.  *See Loving v. Virginia*, 388 U.S. 1, 11 (1967); *see also City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985); *Romer v. Evans*, 517 U.S. 620 (1996).  Indeed, "[b]ecause the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest."  *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs. United v. Fed. Elec. Comm'n*, 558 U.S. 310 (2010).

173.    Defendants, acting under color of state law, are enforcing Section 22949.80, which deprives Plaintiffs of the right to equal protection under the law secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

174.    On its face and as applied, Section 22949.80 is an unconstitutional abridgement of Plaintiffs' rights to equal protection under the law guaranteed by the Fourteenth Amendment because it is a viewpoint-discriminatory and animus-based restriction on Plaintiffs' protected political and ideological speech that serves no compelling governmental interest.

175.    On its face and as evidenced by the legislative history of Section 22949.80, it is clear that the law's purpose and intention is to thwart the promotion and preservation of the nation's historical tradition of firearms ownership in California through the passing down of pro-gun attitudes and traditions to future generations.

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

176.   On its face, Section 22949.80 does not apply to similar or opposing speech made by businesses, organizations, or people who are not considered "firearm industry members."

177.   There is no compelling (or legitimate) government interest in banning Plaintiffs' pure speech concerning "firearm-related products."  California's purported interests in "ensuring that minors do not possess these dangerous weapons" and "protecting its citizens . . . from gun violence" are betrayed by the fact that California does not directly ban the possession of many "firearm-related products" by minors for lawful purposes under a broad range of circumstances.

178.   Nor is there any legitimate interest in singling out politically disfavored "firearm industry members" under Section 22949.80's ban on protected speech—while leaving members of other industries, like the popular entertainment and video game industries, as well as anti-gun organizations free to engage in similar or identical speech.  Rather, Section 22949.80 is steeped in and motivated by animus for "gun culture" and those who participate in it.

179.   Furthermore, assuming *arguendo* that California's interests are compelling—though they are not even legitimate—Section 22949.80 is neither narrowly tailored nor the least restrictive means of achieving those interests.  It encompasses *all* communications "concerning firearm-related products" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products and services, as well as communications that are equally attractive to adults who have a right to obtain information about those products and services.

180.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to equal protection of the laws, entitling them to declaratory and injunctive relief.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

181.   Accordingly, there is an actual and present controversy between the parties.  Plaintiffs seek a declaration that Section 22949.80 violates the Fourteenth Amendment to the United States Constitution.  Plaintiffs further seek a preliminary and, ultimately, permanent injunction prohibiting Defendants from enforcing Section 22949.80.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that the Court grant relief as follows:

1.     A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates the Plaintiffs' free speech rights under the First Amendment to the United States Constitution, on its face and as applied to Plaintiffs;

2.     A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates Plaintiffs' commercial speech rights under the First Amendment to the United States Constitution, on its face and as applied to Plaintiffs;

3.     A declaration that AB 2571, codified at California Business & Professions Code section 22949.80, violates Plaintiffs' rights of assembly and association under the First Amendment to the United States Constitution, on its face and as applied to Plaintiffs;

4.     A declaration that AB 893, codified at California Business & Professions Code section 22949.80, violates Plaintiffs' rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution, on its face and as applied to the Plaintiffs;

5.     A preliminary and permanent injunction prohibiting all Defendants, their employees, agents, successors in office, and all District Attorneys, County

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Counsel, and City Attorneys holding office in the state of California, as well as their successors in office, from enforcing AB 2571, codified at Business & Professions Code section 22949.80;

6.     Awarding remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988.

7.     Granting such other and further relief as the Court deems just and proper.

Dated:  August 5, 2022                              Respectfully submitted,

SNELL & WILMER L.L.P.


By:     _____
        Michael B. Reynolds
        Collin R. Higgins
        Cameron J. Schlagel
        Attorneys for Plaintiffs

4859-6290-5129

Snell & Wilmer
L.L.P.
LAW OFFICES
1920 Main Street, Suite 1200
Irvine, California 92614-7230
(949) 253-2700

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF