Michael B. Reynolds, Bar No. 174534
mreynolds@swlaw.com
Colin R. Higgins, Bar No. 268364
chiggins@swlaw.com
Cameron J. Schlagel, Bar No. 320732
cschlgel@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES SPORTSMEN'S ALLIANCE FOUNDATION, an Ohio nonprofit corporation; SAFARI CLUB INTERNATIONAL, an Arizona nonprofit corporation; and CONGRESSIONAL SPORTSMEN'S FOUNDATION, a Washington, D.C. nonprofit corporation, | Case No. 2:22-cv-01395-DAD-JDP |
| Plaintiffs, | **Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Supporting Memorandum of Points and Authorities** |
| v. | [*Filed concurrently with Request for Judicial Notice, and Declarations of Evan Heusinkveld, Ben Cassidy, and Jeff Crane and Proposed Order*] |
| ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-25, inclusive, | **Hearing Information** |
| Defendants. | Date: December 1, 2022<br>Time: 1:30 p.m.<br>Ctrm: Via Zoom |

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 1, 2022 at 1:30 p.m., via Zoom, Plaintiffs The United States Sportsmen's Alliance Foundation, Safari Club International, and Congressional Sportsmen's Foundation (collectively, "Plaintiffs") will and hereby do move the Court for a preliminary injunction enjoining Rob Bonta, in his official capacity as Attorney General of the State of California ("Defendant" and/or the "Attorney General") from enforcing California Business & Professions Code section 22949.80 ("Section 22949.80"), added by Assembly Bill 2571 ("AB 2571"), 2022 Cal. Stats., Ch. 77, § 2, and amended by Assembly Bill 160 ("AB 160"), 2022 Cal. Stats., Ch. 771, § 1.

This motion (the "Motion") is made under Rule 65 of the Federal Rules of Civil Procedure, and the First, Fifth and Fourteenth Amendments to the United States Constitution. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities attached hereto, the concurrently filed Request for Judicial Notice and Declarations of Evan Heusinkveld, Ben Cassidy, and Jeff Crane, the papers and pleadings from this case on file with the Court, all other matters of which this Court may take judicial notice, any further evidence or argument offered to the Court at any hearing on this Motion, and any other matters that the Court may consider.

Plaintiffs do not anticipate presenting oral testimony at the hearing.

Dated: October 21, 2022                    Respectfully submitted,

                                           SNELL & WILMER L.L.P.


                                           By: _____
                                               Michael B Reynolds
                                               Colin R. Higgins
                                               Cameron J. Schlagel
                                               Attorneys for Plaintiffs

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................10

II.     STATEMENT OF FACTS...................................................................11

    A.      Section 22949.80.......................................................................11

    B.      Actual and Potential Injury to Plaintiffs. ...............................13

III.    THE PRELIMINARY INJUNCTION STANDARD ...................................14

IV.     PLAINTIFFS WILL PREVAIL ON THE MERITS ................................15

    A.      Section 22949.80 is Unconstitutionally Vague.....................15

        1.      Section 22949.80 Is Subject to Strict Review Because It
            Infringes First Amendment Rights. ...........................................16

        2.      Section 22949.80 Fails to Provide Fair Notice and Creates
            an Extreme Risk of Abuse and Arbitrary Enforcement. ..........17

    B.      Section 22949.80 is Unconstitutionally Overbroad.......................18

    C.      Section 22949.80 Violates the First Amendment. ..............................20

        1.      The First Amendment Protects Commercial Speech that is
            Inextricably Intertwined with Protected Activity.....................20

        2.      Section 22949.80 Violates Constitutional Protections on
            Strictly Commercial Speech. ....................................................21

            a.      Section 22949.80 Is Presumptively Invalid Because
                It Imposes a Content- and Speaker-Based Burden
                on Protected Expression. ................................................22

            b.      Section 22949.80 Fails the Central Hudson Test...........23

                (i)      Section 22949.80 Restricts Truthful Speech
                    Concerning Lawful Activity. ...............................24

                (ii)     The State Has No Interest in Banning
                    Plaintiffs' Protected Speech.................................26

                (iii)    The State Cannot Establish That Section
                    22949.80 Directly and Materially Advances
                    a Legitimate Government Interest. ......................26

                (iv)    Section 22949.80 Is More Extensive than
                    Necessary. ...........................................................29

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Notice of Motion and Motion for Preliminary Injunction          (22-cv-01395)

**TABLE OF CONTENTS**
(continued)

Page

D.   Section 22949.80 Impermissibly Infringes Plaintiffs' Right to Associate. ............................................................................31

E.   Section 22949.80 Denies Plaintiffs Equal Protection of the Laws. ..................................................................................32

V.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ............................33

VI.  THE BALANCE OF THE EQUITIES TIPS IN PLAINTIFFS' FAVOR...................................................................................................33

VII. AN INJUNCTION IS IN THE PUBLIC INTEREST ..................................34

VIII. CONCLUSION ..........................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*44 Liquormart, Inc. v Rhode Island*,
  517 U.S. 484 (1996)..................................................................21, 26, 29

*A.C.L.U. of Nevada v. City of Las Vegas*,
  466 F.3d 784 (9th Cir. 2006) ................................................................23

*ACLU v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ...............................................................34

*Alliance of the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .......................................................14, 15

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002)..............................................................................27

*Austin v. Mich. Chamber of Commerce*,
  494 U.S. 652 (1990)..............................................................................32

*Bates v. State Bar of Arizona*,
  433 U.S. 350 (1977).................................................................19, 27, 34

*Bolger v. Youngs Drug Prods.*,
  463 U.S. 60 (1983)................................................................................20

*Buckley v. Valeo*,
  424 U.S. 1 (1976)..................................................................................31

*Carey v. Population Servs. Int'l*,
  431 U.S. 678 (1977)..............................................................................20

*Carter v. Welles-Bowen Realty, Inc.*,
  719 F. Supp. 2d 846 (N.D. Ohio 2010) ...............................................18

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980)........................................................................passim

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
  473 U.S. 432 (1985)..............................................................................32

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971).................................................................16, 17, 18, 20

*Cohen v. San Bernardino Valley College*,
  92 F.3d 968 (9th Cir. 1996) ..................................................................16

*Connally v. General Construction Co.*,
  269 U.S. 385 (1926)..............................................................................15

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cox v. Louisiana,*
  379 U.S. 536 (1965)..............................................................................18, 20

*District of Columbia v. Heller*, 554 U.S. 570, 628–29, 635 (2008) ........................21

*Edenfield v. Fane,*
  507 U.S. 761 (1993)..............................................................................21, 27

*Elrod v. Burns,*
  427 U.S. 347 (1976)....................................................................................33

*Ezell v. City of Chicago*, 846 F.3d 684 (7th Cir. 2011).....................................24, 25

*Forsyth County, Ga. v. Nationalist Movement,*
  505 U.S. 123 (1992)....................................................................................22

*Garrett v. City of Escondido,*
  465 F. Supp. 2d 1043 (S.D. Cal. 2006) ......................................................33

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972).......................................................................15, 16, 18

*Greater New Orleans Broad. Ass'n v. United States,*
  528 U.S. 173 (1999)....................................................................................26

*Hibbs v. Winn,*
  542 U.S. 88 (2004)......................................................................................25

*Hunt v. City of Los Angeles,*
  601 F. Supp. 2d 1158 (C.D. Cal. 2009) .......................................................17

*Joelner v. Vill. of Wash. Park,*
  378 F.3d 613 (7th Cir. 2004) .....................................................................33

*Jones v. Bonta*, 34 F.4th 704, 720–23 (9th Cir. 2022) .....................................24, 25

*Klein v. City of San Clemente,*
  584 F.3d 1196 (9th Cir. 2009) ................................................................33, 34

*Kolender v. Lawson,*
  461 U.S. 352 (1983)....................................................................................15

*Legend Night Club v. Miller,*
  637 F.3d 291 (4th Cir. 2011) .....................................................................33

*Linmark Assocs., Inc. v. Willingboro Twp.,*
  431 U.S. 85 (1977)......................................................................................29

*Lorillard Tobacco Co. v. Reilly,*
  533 U.S. 525 (2001)................................................................................21, 29

*N.A.A.C.P. v. Button,*
  371 U.S. 415 (1963)...........................................................................16, 20, 31

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022).........................................................................21, 24, 25

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*NAACP v. Patterson,*
357 U.S. 4492 (1958 ........................................................................................31

*New York v. Ferber,*
458 U.S. 747 (1982) .........................................................................................28

*Nordyke v. Santa Clara,*
110 F.3d 707 (9th Cir. 2009) ...........................................................................24

*Pacific Mut. Life Ins. Co. v. Haslip,*
499 U.S. 1 (1991) .............................................................................................15

*Preminger v. Principi,*
422 F.3d 815 (9th Cir. 2005) ...........................................................................34

*Project 80's, Inc. v. City of Pocatello,*
942 F.2d 635 (9th Cir. 1991) ...........................................................................30

*R.A.V. v. St. Paul,*
505 U.S. 377 (1992) ...................................................................................22, 23

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) .........................................................................................22

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
487 U.S. 781 (1988) .........................................................................................20

*Rubin v. Coors Brewing Co.,*
514 U.S. 476 (1995) .........................................................................................21

*Saia v. New York,*
334 U.S. 558 (1948) .........................................................................................18

*Sammartano v. First Judicial Dist. Ct.,*
303 F.3d 959 (9th Cir. 2002) ...........................................................................34

*Shelton v. Tucker,*
364 U.S. 479 (1960) .........................................................................................31

*Shuttlesworth v. Birmingham,*
394 U.S. 147 (1969) .........................................................................................18

*Sorrell v. IMS Health Inc.,*
564 U.S. 552 (2011) ...................................................................................passim

*Staub v. City of Baxley,*
355 U.S. 313 (1958) .........................................................................................18

*Stormans, Inc. v. Stelecky,*
586 F.3d 1109 (9th Cir. 2009) .........................................................................33

*Thompson v. Western States Medical Center,*
535 U.S. 357 (2002) .......................................................................21, 27, 28, 29

*Tracy Rifle & Pistol LLC v. Harris,*
339 F. Supp. 3d 1007 (E.D. Cal. 2018) .....................................................10, 26

- 7 -

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*United States v. Hansen,*

4

   25 F.4th 1103 (9th Cir. 2022) ...............................................................19

*United States v. Stevens,*

5

   559 U.S. 460 (2010).................................................................passim

6

*United States v. Williams,*

   553 U.S. 285 (2008)..............................................................18, 25

7

*United v. Fed. Elec. Comm'n,*

8

   558 U.S. 310 (2010)........................................................................32

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*

9

   425 U.S. 769 ...................................................................27, 29, 34

10

*Valle Del Sol Inc. v. Whiting,*

   709 F.3d 808 (9th Cir. 2013) ....................................................20, 30, 33

11

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*

12

   455 U.S. 489 (1982).......................................................................15, 16

*W. Va. State Bd. of Educ. v. Barnette,*

13

   319 U.S. 624 (1943) ...........................................................................16

14

*Wooley v. Maynard,*

   430 U.S. 705 (1977) ............................................................................31

15

**STATUTES**

16

17

Cal. Bus. & Prof. Code § 22949 ..................................................................12

Cal. Bus. & Prof. Code § 22949.80 .....................................................passim

18

Cal. Bus. & Prof. Code § 22949.80(a) ...............................................23, 25, 28

19

Cal. Bus. & Prof. Code § 22949.80(a)(1)................................................11, 17

20

Cal. Bus. & Prof. Code § 22949.80(a)(2)...........................................13, 17, 23

Cal. Bus. & Prof. Code § 22949.80(a)(2)(A) ..............................................18

21

Cal. Bus. & Prof. Code § 22949.80(a)(2)(B) .........................................16, 17

22

Cal. Bus. & Prof. Code § 22949.80(a)(2)(C) ..............................................18

Cal. Bus. & Prof. Code § 22949.80(a)(2)(D) ..............................................18

23

Cal. Bus. & Prof. Code § 22949.80(a)(3)....................................................13

24

Cal. Bus. & Prof. Code § 22949.80(c)(3) ..........................................12, 25, 28

Cal. Bus. & Prof. Code § 22949.80(c)(4) ...............................................11, 23

25

Cal. Bus. & Prof. Code § 22949.80(c)(5) ..........................................11, 25, 28

26

Cal. Bus. & Prof. Code § 22949.80(c)(6)...................................12, 22, 25, 28

Cal. Bus. & Prof. Code § 22949.80(e)(1) ....................................................13

27

Cal. Bus. & Prof. Code § 22949.80(e)(3)–(5) ...........................................13

28

Cal. Pen. Code § 29615 ...............................................................................25

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Pen. Code § 29655 ............................................................................................25

U.S. CONST., amend. I .............................................................................................31

U.S. CONST., amend. XIV..........................................................................................32

# OTHER AUTHORITIES

2022 Cal. Stats. Ch. 771, § 1 ...................................................................................13

2022 Cal. Stats., Ch. 77, § 1(a)..........................................................................27, 28

2022 Cal. Stats., Ch. 77, §§ 1(b) & 3 .......................................................................11

AB 160........................................................................................................................11

AB 2571 .........................................................................................................10, 11, 26

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Notice of Motion and Motion for Preliminary Injunction          (22-cv-0010)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## **INTRODUCTION**

California has for years attempted unconstitutionally to restrict firearm industry members' First Amendment rights. This Court previously struck down a similar advertising restriction in 2018. *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007 (E.D. Cal. 2018). Now, through Section 22949.80, California seeks to preclude truthful speech concerning the lawful use of firearms by adults and minors. Wearing its animus on its sleeve, California's Legislature openly declared its purpose: to stamp out a way of life it disdains, by preventing Second Amendment advocates from "attract[ing] future legal gun owners" and "recruiting children into gun culture."[1]

Section 22949.80, on its face, is unconstitutional because it:

- Is unduly vague in violation of the Fifth and Fourteenth Amendments;
- Imposes content- and speaker-based restrictions on lawful commercial speech in violation of the First Amendment;
- Regulates nonmisleading commercial speech concerning lawful activity but does not advance any legitimate State interest;
- Infringes Plaintiffs' right to freely assemble and associate; and
- Discriminates against Second Amendment advocates without any constitutionally permissible justification.

Plaintiffs will be irreparably harmed without an injunction. An injunction is also in the public interest. The Court should therefore enjoin enforcement of Section 22949.80 *pendente lite*.

---

[1] RJN, ¶ 3 & Ex. 3 (California Senate Judiciary Committee, AB 2571 (Bauer-Kahan) (June 14, 2022) at 7–8 (quoting Josh Sugarman, Violence Policy Center, *"Start Them Young": How the Firearms Industry and Gun Lobby Are Targeting Your Children*, VPC (Feb. 2016)).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## II.

## STATEMENT OF FACTS

**A.      Section 22949.80.**

On June 30, 2022, "to further restrict the marketing and advertising of firearms to minors," the California Legislature passed, and Governor Newsom signed into law, AB 2571, which took effect immediately. 2022 Cal. Stats., Ch. 77, §§ 1(b) & 3. AB 2571 added Section 22949.80, then in August 2022, AB 160 was signed into law amending Section 22949.80. As amended, Section 22949.80 makes it unlawful for any "***firearm industry member***" to "advertise, market, or arrange for placement of an ***advertising or marketing*** communication offering or promoting any ***firearm-related product*** in a manner that is designed, intended, ***or reasonably appears to be attractive to minors***." Cal. Bus. & Prof. Code § 22949.80(a)(1) (emphasis added).

The term "firearm industry member" includes, in relevant part, any person or entity whose purpose is "promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products" that:

> (i) advertises firearm-related products[;] (ii) advertises events where firearm-related products are sold or used[;] (iii) endorses specific firearm-related products[;] [or] (iv) sponsors or otherwise promotes events at which firearm-related products are sold or used.

*Id.* § 22949.80(c)(4).

The statute defines "firearm-related product" as including "a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a ***firearm accessory***" sold in California or directed in some way towards California residents. *Id.* § 22949.80(c)(5) (emphasis added).

"Firearm accessory" is, in turn, defined as "an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities

- 11 -

SNELL & WILMER

L.L.P.

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

of a firearm, the lethality of the firearm, ***or a shooter's ability to hold, carry, or use*** a firearm." *Id.* § 22949.80(c)(3) (emphasis added). This definition inherently encompasses a broad range of products, from backpacks and hunting vests to protective gear like eyewear and earplugs.

The phrase "marketing or advertising" means:

> [I]n exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product ***or service*** the primary purpose of which is to encourage recipients of the communication to purchase ***or use*** the product ***or service***.

*Id.* § 22949.80(c)(6) (emphasis added).

Finally, the determination of whether "marketing or advertising of a firearm-related product is attractive to minors"—and, thus, whether a particular marketing or advertising violates Section 22949—is delegated the "court[s]," which the statute directs to consider six ***nonexclusive*** factors:

> ***[T]he totality of the circumstances***, including, ***but not limited to***, whether the marketing or advertising:
>
> (A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.
>
> (B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.
>
> (C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.
>
> (D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.
>
> (E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

SNELL & WILMER

L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

(F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2) (emphasis added).[2]

Violations of Section 22949.80 are punishable by a civil penalty of up to $25,000 for ***each copy*** of an offending advertisement, recovered through a civil action brought by the Attorney General or by any district, county, or city attorney. *Id.* § 22949.80(e)(1). The statute also authorizes private actions by any "person harmed by a violation" of the statute, injunctive relief, and an award of attorney's fees and costs, but ***only to a prevailing plaintiff***. *Id.* § 22949.80(e)(3)–(5).

## B.    Actual and Potential Injury to Plaintiffs.

Plaintiffs engage in, or facilitate, a broad range of advertising communications concerning lawful Second Amendment conduct—advertising that is now prohibited by Section 22949.80. Sportsmen's Alliance, Safari Club, and CSR, for example, publish communications featuring articles and images that depict minors lawfully using firearms and firearm-related products.[3] They also sell space for traditional advertising concerning firearm-related products that California law allows minors to use and possess.[4]

Plaintiffs also sell and provide branded merchandise featuring caricatures and cartoons—many of which may appeal to youths and adults—to promote their

---

[2] As amended, Section 22949.80 exempts from its scope communications "offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp." *Id.* § 22949.80(a)(3), 2022 Cal. Stats. Ch. 771, § 1.
[3] Heusinkveld Decl., ¶¶ 8–10, 13 & Exs. 1–4; Cassidy Decl., ¶¶ 6–15 & Exs. 1–2; Crane Decl., ¶¶ 13–15 & Exs. 1–3.
[4] *See id.*

- 13 -

SNELL & WILMER

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626/2689

organizations, solicit membership and other support, and promote pro-Second Amendment messages and ideas.[5]

Finally, Plaintiffs advertise, market, promote, sponsor, and facilitate lawful recreational youth shooting events, educational programs and safety courses, or gun shows where youths are likely to attend.[6] These events often involve the handling or use of firearms and firearm-related products, and exhibitors or advertising by third parties promoting membership in their organizations, distributing of branded merchandise, or engaging in speech promoting the safe and lawful use of firearms.[7]

Irreparable injury to Plaintiffs is imminent. Unless enjoined, Defendant will enforce Section 22949.80 in derogation of Plaintiffs' constitutional rights. Because Section 22949.80 took effect upon being signed into law (as an "emergency measure"), Plaintiffs and similarly situated "firearm industry members" have curtailed their constitutionally-protected speech out of fear of liability under Section 22949.80's unconstitutional provisions.[8]

## III.

## THE PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is warranted where the movant demonstrates "(1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) that its claims raise serious questions as to the merits and that the balance of the hardships tips in its favor." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003); *see also Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit utilizes a sliding scale approach under which the elements of the test are balanced,

---

[5] Heusinkveld Decl., ¶¶ 8–10; Cassidy Decl., ¶¶ 6–15, 23; Crane Decl., ¶¶ 14, 18.
[6] Heusinkveld Decl., ¶ 7; Cassidy Decl., ¶¶ 16–20; Crane Decl., ¶¶ 10–12.
[7] Cassidy Decl., ¶¶ 16–20, 26–27; Crane Decl., ¶¶ 10–12, 20.
[8] Heusinkveld Decl., ¶ 12–16; Cassidy Decl., ¶¶ 23–27; Crane Decl., ¶¶ 17–20.

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

"so that a stronger showing of one element may offset a weaker showing of another." *Alliance*, 632 F.3d at 1131.

## IV.

## **PLAINTIFFS WILL PREVAIL ON THE MERITS**

Plaintiffs assert numerous constitutional challenges to Section 22949.80. As discussed below, Plaintiffs are likely to prevail on each.

### A.    Section 22949.80 is Unconstitutionally Vague.

The void for vagueness doctrine is rooted in the basic due process principle that a law is unconstitutional "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 44 (1991) ("Due process requires that a State provide meaningful standards to guide the application of its laws."). There are two independent means by which a statute can operate in an unconstitutionally vague manner. First, a statute is unconstitutionally vague if it fails to provide "fair warning" of what conduct will subject a person to liability. *See, e.g.*, *Grayned*, 408 U.S. at 108–09; *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). Second, and "most important," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), a law is unconstitutionally vague if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application," *Grayned*, 408 U.S. at 108–09. To prevent those dangers, statutes "must provide explicit standards for those who apply them." *Id.*

The most important factor affecting the degree of clarity that the Constitution requires is whether constitutional rights are at stake. *See Village of Hoffman Estates v. Flipside, Hoffman Estates*, *Inc*., 455 U.S. 489, 498–99 (1982). Laws that intrude upon "basic First Amendment Freedoms"—like Section 22949.80—require a higher degree of clarity because "[u]ncertain meanings inevitably lead citizens to

steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (citations and internal quotation marks omitted); *see also N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963); *Cohen v. San Bernardino Valley College*, 92 F.3d 968, 972 (9th Cir. 1996) ("[w]here the guarantees of the First Amendment are at stake the [Supreme] Court applies its vagueness analysis strictly").[9]

Due to the restraints on protected expression that Section 22949.80 imposes, the statute's penal nature, and the high potential for arbitrary enforcement and abuse, the Constitution requires stringent review.

1. Section 22949.80 Is Subject to Strict Review Because It Infringes First Amendment Rights.

Section 22949.80 intrudes on First Amendment rights in at least three ways. First, it is unconstitutionally overbroad because it penalizes the marketing of lawful items and brings protected speech within its sweep. *See* Section IV.B., *infra*; *Coates v. City of Cincinnati*, 402 U.S. 611, 614–15 (1971).

Second, the statute infringes protected symbolic speech. A symbol is as powerful a statement of an idea as a word and is afforded the same constitutional protection. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632–33 (1943). One consideration, among others, that Section 22949.80 prescribes to determine whether an advertising communication is "attractive to minors" is whether it "[o]ffers brand name merchandise for minors" such as "hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product." Cal. Bus. & Prof. Code § 22949.80(a)(2)(B). Because Plaintiffs are "firearm industry members," Section 22949.80 prohibits this

---

[9] The degree of permissible vagueness depends in part on the nature of the enactment. *Village of Hoffman Estates*, 455 U.S. at 498. Statutes with criminal rather than civil penalties generally are subject to a stricter vagueness test. *Id.*

SNELL & WILMER

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  protected speech. *See* Cal. Bus. & Prof. Code § 22949.80(a)(1) & (a)(2)(B). *Cf.*

2  *Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158 (C.D. Cal. 2009), *aff'd* 638 F.3d

3  703 (9th Cir. 2011) ("The sale of merchandise inextricably intertwined with a

4  religious, political, ideological, or philosophical message is fully protected by the

5  First Amendment.").

6       Third, Section 22949.80 restrains truthful commercial advertising concerning

7  lawful products if such advertising might be subjectively deemed "reasonably . . .

8  attractive to minors," and despite that it may be equally appealing to adults. *See*

9  Section IV.C., *infra*.

10

11       2.    <u>Section 22949.80 Fails to Provide Fair Notice and Creates an Extreme</u>

12            <u>Risk of Abuse and Arbitrary Enforcement</u>.

13       Section 22949.80 is unduly vague in multiple respects. First, its definition of

14  "firearm-related product" encompasses more than just the sale of firearms. As

15  discussed above, the term includes "firearm-related accessories", which is defined

16  so vaguely as to encompass an entire panoply of products that are useful for both

17  firearm-related activities and non-firearm-related activities (such as backpacks,

18  vests, earplugs and safety goggles)—none of which are unlawful for minors to

19  possess. That, coupled with the statute's use of the word "promoting," makes it

20  impossible to know what communications Section 22949.80 prohibits. *Cf. Coates*,

21  402 U.S. at 614–15.

22       Moreover, Section 22949.80 invites arbitrary enforcement and abuse because

23  it requires judges to determine subjectively whether a particular advertisement is

24  "attractive to minors" based on the "totality of the circumstances," including

25  consideration of six ***non-exclusive*** factors. Cal. Bus. & Prof. Code

26  § 22949.80(a)(2). This enforcement provision is clothed in subjectivity. What may

27  be considered "attractive to minors" varies from person to person, including the

28  judges tasked with applying the statute. Section 22949.80 fails to provide any

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

standard capable of objective application as the Constitution requires. Worse, the
six non-exclusive factors are themselves permeated by subjectivity, turning upon
words and phrases like "reasonably appear" and "appeal," the meaning of which
depends on the particular judge's idiosyncratic interpretation of the advertisement
at bar. *Id.* § 22949.80(a)(2)(A), (C), & (D).

This extreme risk of arbitrary enforcement has already caused Plaintiffs and
others to refrain from speech that might arguably fall within the statute's
indeterminable unlawful zone.[10] *Grayned*, 408 U.S. at 109. The Supreme Court has
consistently struck down similarly subjective statutes as unconstitutional. *See, e.g.*,
*Coates*, 402 U.S. at 614; *Cox v. Louisiana*, 379 U.S. 536, 551–52 (1965); *see also*
*Carter v. Welles-Bowen Realty, Inc.*, 719 F. Supp. 2d 846, 852 (N.D. Ohio 2010),
*aff'd*, 736 F.3d 722 (6th Cir. 2013) (HUD's ten factor test for distinguishing "sham"
and "bona fide" providers, for purposes of an exception to the RESPA, was void for
vagueness because the factors themselves were vague, and that vagueness was
compounded by the inherently subjective balancing test). And it has likewise
condemned broadly worded licensing ordinances granting such standardless
discretion to public officials that they are free to censor ideas and enforce their own
personal preferences. *See, e.g.*, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153–
55, 158–59 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 322, 325 (1958); *Saia v.
New York*, 334 U.S. 558, 560–62 (1948).

Like the laws in *Shuttlesworth*, *Staub*, and *Saia*, Section 22949.80 is
impermissibly vague and must be stricken.

**B.     Section 22949.80 is Unconstitutionally Overbroad.**

Under the First Amendment overbreadth doctrine, "a statute is facially
invalid if it prohibits a substantial amount of protected speech." *United States v.
Williams*, 553 U.S. 285, 292 (2008). "An overbroad statute infringes on a

---

[10] Heusinkveld Decl., ¶ 12–16; Cassidy Decl., ¶¶ 23–27; Crane Decl., ¶¶ 17–20.

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

substantial amount of constitutionally protected speech where there is 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court,' or the statute is 'susceptible of regular application to protected expression.'" *United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir. 2022). "An overbroad statute might serve to chill protected speech. First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the in terrorem effect of the statute." *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977).

Section 22949.80 prohibits a substantial amount of lawful, constitutionally protected speech. *See United States v. Stevens*, 559 U.S. 460, 475–77 (2010) (focusing heavily on the requirement that the underlying act of animal cruelty be illegal but nevertheless invalidating a statute banning depictions of animal cruelty under the overbreadth doctrine). It encompasses *all* communications "offering or promoting any firearm-related product" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products as well as communications that are equally attractive to adults who have a right to obtain information about those products.

Additionally, by restricting advertising that promotes the sale of "firearm-related products" to minors, Section 22949.80 burdens a vast amount of pure speech. For example, Section 22949.80 bans advertising and marketing of "firearm-related products" in any manner that may relate to youth shooting events, competitions and education programs designed to instill students with an appreciation of the history, text and tradition of the Second Amendment and firearms ownership in the United States. It will also prohibit or discourage firearms-related organizations from soliciting youth members through marketing and providing youth memberships.

Regardless of the intent underlying Section 22949.80, which is irrelevant in an overbreadth challenge because "[t]he First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs," *Stevens*, 559 U.S. at 470, the statute will have the effect of chilling constitutionally protected speech and activities. In fact, Plaintiffs have already started to curtail speech that ***might*** fall under Section 22949.80's overly broad ban.[11] This chilling of speech itself offends the First Amendment. *See, e.g.*, *Coates*, 402 U.S. at 614–15; *Cox*, 379 U.S. at 551–52; *Button*, 371 U.S. at 433.

**C.    Section 22949.80 Violates the First Amendment.**

Putting Section 22949.80's vagueness and overbreadth aside, the statute is unconstitutional because it prohibits firearm industry members from disseminating truthful, non-misleading commercial information about lawful, constitutionally protected products and activities.

1.    The First Amendment Protects Commercial Speech that is Inextricably Intertwined with Protected Activity.

When an advertisement is "inextricably intertwined with core political and economic messages," the statute regulates core political speech, not just commercial speech, and is subject to heightened scrutiny. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013) (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 796 (1988)). For instance, the Supreme Court has struck down bans on advertising of contraceptives, partly because "the information suppressed by this statute 'related to activity with which, at least in some respects, the State could not interfere.'" *Carey v. Population Servs. Int'l*, 431 U.S. 678, 700–01 (1977) (citation omitted); *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 69 (1983) (striking down ban on mailing contraceptive advertisements, partly because

---

[11] Heusinkveld Decl., ¶ 12–16; Cassidy Decl., ¶¶ 23–27; Crane Decl., ¶¶ 17–20.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

"advertising for contraceptives . . . relates to activity which is protected from unwarranted state interference"). The same heightened constitutional protection extends to the lawful possession and use of firearms, which the Second Amendment protects against unwarranted state interference. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2127, 2129–30 (2022); *District of Columbia v. Heller*, 554 U.S. 570, 628–29, 635 (2008).

2. <u>Section 22949.80 Violates Constitutional Protections on Strictly Commercial Speech</u>.

Though the First Amendment's protection of commercial speech is strongest where the speech concerns constitutionally protected products and activities, it also protects commercial speech about products and activities that are not themselves constitutionally protected. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) (outdoor and point-of-sale tobacco advertising); *44 Liquormart, Inc. v Rhode Island*, 517 U.S. 484 (1996) (advertising of alcohol prices); *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (disclosure of alcohol content on beer labels).

The Supreme Court has articulated two different tests for commercial speech restrictions. Under each, the State bears the burden of proving the constitutionality of a commercial speech restriction. *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002); *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). Here, both tests yield the same result:

- First, Section 22949.80 fails heightened scrutiny for content- and speaker-based restrictions. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011); *Thompson*, 535 U.S. at 374.

- Second, even assuming *arguendo* that Section 22949.80 survives scrutiny under *Sorrell* and *Thompson*, it fails the commercial speech test articulated in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980).

- 21 -

a.      *Section 22949.80 Is Presumptively Invalid Because It Imposes a Content- and Speaker-Based Burden on Protected Expression.*

The Supreme Court reaffirmed in *Sorrell* that "heightened judicial scrutiny is warranted" when a statute is "designed to impose a specific, content-based burden on protected expression." 564 U.S. at 565. "The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys," even in the commercial speech context. *Id.* at 566 (internal quotations omitted). "Content-based regulations" are those that selectively ban speech based on its "particular subject matter" or "its function or purpose." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law is also considered content based if, to enforce it, an official "must necessarily examine the content of the message that is conveyed." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992). Such laws are "presumptively invalid," which in the ordinary case "is all but dispositive" of the statute's constitutionality. *Sorrell*, 564 U.S. at 571 (concluding that "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied" (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)).

In *Sorrell*, for example, the Supreme Court invalidated a Vermont law that restricted pharmaceutical companies from using certain industry information to market drugs to doctors. 564 U.S. at 557–58. The Court explained that States are not permitted to advance policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, nor may they "burden the speech of others in order to tilt public debate in a preferred direction," *id.* at 578–79.

Section 22949.80 suffers from the same infirmities as the Vermont statute in *Sorrell*.  For starters, Section 22949.80 is content based. It specially targets speech "concerning firearm-related products," the "primary ***purpose*** of which is to encourage recipients . . . to purchase or use the product or service." Cal. Bus. & Prof. Code § 22949.80(c)(6) (emphasis added); *cf. Reed*, 576 U.S. at 163.

- 22 -

1    Furthermore, Section 22949.80 requires judges to "evaluate the substantive content

2    of a message to know whether the [law] applies" based on the totality of the

3    circumstances. *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 796 n.12

4    (9th Cir. 2006) (summarizing and distinguishing Ninth Circuit precedent); *see also*

5    *Stevens*, 559 U.S. at 468. Indeed, the determination of "whether marketing or

6    advertising of a firearm-related product is attractive to minors" cannot be made

7    without a judge evaluating the content of the message to decide whether the law

8    applies. Cal. Bus. & Prof. Code § 22949.80(a)(2).

9         Section 22949.80 also engages in speaker-based discrimination by singling

10   out "firearm industry member[s]." Cal. Bus. & Prof. Code § 22949.80(a) & (c)(4).

11   For example, Section 22949.80 prohibits Plaintiffs from advertising and

12   advocating, even indirectly, the possession and use of a "firearm-related product,"

13   such as by soliciting or promoting pro-Second Amendment activity using branded

14   merchandise. The statute does not, however, prohibit non-firearm industry members

15   from engaging in the same speech—using similar imagery irrespective of the

16   content of the message—to promote their organizations, solicit support, and spread

17   political ideas.

18        Because Section 22949.80 imposes a content- and speaker-based burden on

19   protected speech, it is "presumptively invalid." *Sorrell*, 564 U.S. at 571 ("the

20   outcome is the same whether a special commercial speech inquiry or a stricter form

21   of judicial scrutiny is applied" (quoting *R.A.V.*, 505 U.S. at 382)).

23        *b.    Section 22949.80 Fails the Central Hudson Test.*

24        The First Amendment protects commercial speech—speech that "does no

25   more than propose a commercial transaction" or relates solely to the economic

26   interests of the speaker and audience—provided it is not misleading and concerns

27   lawful activity. *Cent. Hudson*, 447 U.S. at 563. Under *Central Hudson*, a court first

28   inquires "whether the expression [being restricted] is protected by the First

- 23 -

Amendment," which means that "it at least must concern lawful activity and not be misleading." *Id.* at 566. Second, the State must show that the "asserted governmental interest is substantial." *Id.* Then, "[i]f both inquiries yield positive answers," a court "must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.*

(i)     Section 22949.80 Restricts Truthful Speech Concerning Lawful Activity.

On its face, Section 22949.80 restricts a broad range of truthful speech concerning lawful activity. "An offer to sell firearms or ammunition" is constitutionally protected commercial speech. *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009). And the Second Amendment protects the right of minors to bear arms and maintain proficiency in their use, subject to limited and well-established historical regulations such as those requiring adult approval and supervision. *See Jones v. Bonta*, 34 F.4th 704, 720–23 (9th Cir. 2022) ("young adults have Second Amendment protections"); *Ezell v. City of Chicago*, 846 F.3d 684, 896 (7th Cir. 2011) (recognizing these rights are protected by the Second Amendment); *see also Bruen*, 142 S. Ct. at 2127, 2129–30.

As discussed, Plaintiffs engage in a range of speech that Section 22949.80 now prohibits. Plaintiffs widely distribute printed and electronic communications promoting their events and programs, including images and/or depictions of minors handling or "using firearm-related products."[12] Furthermore, their lawful activities regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors exercising, or otherwise

---

[12] Heusinkveld Decl., ¶¶ 8–10, 13; Cassidy Decl., ¶¶ 6–15; Crane Decl., ¶¶ 13–15.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

encouraging minors to exercise, their Second Amendment right to possess and use lawful firearms for lawful purposes.[13]

Section 22949.80 is not limited to commercial sales of firearms. Instead, the statute's broad definitions of "firearm accessory," "firearm-related product," and "marketing or advertising" encompass much more than just the sale of firearms. *See* Cal. Bus. & Prof. Code § 22949.80(c)(3), (5), & (6); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (a statute must be interpreted "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). Read together with its constituent parts, Section 22949.80 prohibits advertising of not only firearms, but also a wide range of "firearm-related products." Cal. Bus. & Prof. Code §§ 22949.80(a), (c)(3), (5), & (6). That construction is consistent with the "evidence" that lawmakers cited in support of the statute, which shows the statute's purpose is to prevent firearm industry members from "attract[ing] future legal gun owners" and "recruiting children into gun culture."[14]

Further to this point, although minors cannot lawfully purchase firearms in California, the law allows them to possess and use firearms under certain circumstances with adult supervision—indeed, they have a constitutional right to do so. *See Jones*, 34 F.4th 720–23; *Ezell*, 846 F.3d at 896; *see also Bruen*, 142 S. Ct. at 2127, 2129–30; Cal. Penal Code §§ 29615, 29655. The State therefore cannot rely on the principle that "offers to give or receive what it is unlawful to possess . . . enjoy no First Amendment protection." *United States v. Williams*, 553 U.S. 285, 298 (2008). And even in cases involving unlawful items, an intent to "initiat[e] the transfer" of the unlawful product is required. *Id*. at 300. However, Section 22949.80's scienter element requires only that the advertisement be "intended . . . to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a). The statute does not require that intent to initiate an unlawful transfer be proven. *Cf. Stevens*, 559 U.S. at

---

[13] Cassidy Decl., ¶¶ 16–20, 26–27; Crane Decl., ¶¶ 10–12, 20.

[14] *See* California Senate Judiciary Committee, *supra* note 1, at 7–8.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626/7689

474 (statute was overbroad because its "ban on a 'depiction of animal cruelty' nowhere requires that the depicted conduct be cruel."); *see also id.* at 475 (although the statute did require the that the depicted conduct be "illegal," it did not distinguish "based on the reason the . . . killing of an animal is made illegal").

                 (ii)    The State Has No Interest in Banning Plaintiffs' Protected Speech.

     AB 2571 claims to advance two "compelling" state interests: (1) "ensuring that minors do not possess these dangerous weapons," (i.e., firearms); and (2) "protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." Plaintiffs dispute the genuineness of these interests and contend that Section 22949.80 does nothing to advance them. *See* Section IV.C.2.b(ii), *infra*. The Supreme Court has repeatedly said that "bans that target truthful, nonmisleading commercial messages rarely protect consumers from [commercial] harms. Instead, such bans often serve only to obscure an 'underlying governmental policy' that could be implemented without regulating speech." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502–03 (1996).

                 (iii)   The State Cannot Establish That Section 22949.80 Directly and Materially Advances a Legitimate Government Interest.

     The third *Central Hudson* prong requires the government to show "that the speech restriction directly and materially advances the asserted governmental interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188 (1999). This requires more than "mere speculation or conjecture; rather, a governmental body seeking to restrain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

alleviate them to a material degree." *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1013 (E.D. Cal. 2018) (quoting *Edenfield*, 507 U.S. at 770–71).

The direct advancement prong requires the government to advance its goals "in a permissible way," not by operating based on "the 'fear that people would make bad decisions if given truthful information.'" *Sorrell*, 564 U.S. at 570 (quoting *Thompson*, 535 U.S. at 374); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002). And the "not more extensive than is necessary" prong reflects the principle that, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson*, 535 U.S. at 373.

Thus, regulations that "only indirectly advance the state interest involved" have consistently been declared unconstitutional. *Cent. Hudson*, 447 U.S. at 564. For example, in *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, the Supreme Court invalidated a law declaring it unprofessional for a pharmacist to advertise prescription drug prices because "[t]he advertising ban [did] not directly affect professional standards one way or the other." 425 U.S. at 769. Likewise, in *Bates v. State Bar of Arizona*, the Court invalidated an advertising prohibition designed to protect the "quality" of a lawyer's work, finding that "[r]estraints on advertising . . . are an ineffective way of deterring shoddy work." 433 U.S. at 378.

Section 22949.80 is even more attenuated from the State's declared interests. The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state," 2022 Cal. Stats., Ch. 77, § 1(a), based in part on the fact that "[i]n 2021 there were approximately 259 ***unintentional shootings*** by children, resulting in 104 deaths and 168 injuries."[15] It then declared that "[f]irearms marketing contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." *Id.* The Legislature, in effect, speculates that prohibiting a broad category of speech promoting firearms

---

[15] California Senate Judiciary Committee, *supra* note 1, at 7–8.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

and "firearm-related products" in a manner that *might* be attractive to minors will reduce demand for firearms. The Legislature then concludes by drawing another attenuated (or more likely nonexistent) connection between this speculative reduction in demand and the interest in protecting minors from gun violence.

As discussed, Section 22949.80 prohibits advertising of a wide range of "firearm-related products," not just firearms. Cal. Bus. & Prof. Code §§ 22949.80(a), (c)(3), (5), & (6). That notwithstanding, the advertising ban does not directly affect the unlawful sale of firearms to minors, nor can it directly affect the number of shootings involving minors. *Cf. New York v. Ferber*, 458 U.S. 747, 759, 761 (1982) (the market for child pornography was "intrinsically related" to the underlying abuse, and was therefore "an integral part of the production of such materials, an activity illegal throughout the Nation"); *Stevens*, 559 U.S. at 470–72. Moreover, there is no finding or evidence tying these unintentional shootings to the unlawful sale of a firearm, let alone to advertising related to any such unlawful sale. The state cannot point to a single instance showing that a "firearm industry member" would advertise an illegal sale of a firearm to a minor. Instead, to the extent any commercial transaction is proposed, it is a lawful transaction to be consummated by an adult through a licensed firearms dealer.

Nor does the advertising ban conceivably affect "the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." 2022 Cal. Stats., Ch. 77, § 1(a). Notwithstanding the Legislature's failure to relate these purported unlawful transfers to minors with the cited incidences of unintentional shootings involving minors, any such transfer is too attenuated from the commercial transaction for the advertising ban to reduce the instances of these unlawful transfers from adults to minors.

Moreover, the State lacks an interest "in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information." *Thompson*, 535 U.S. at 374; *Sorrell*,

- 28 -

564 U.S. at 577. Thus, to the extent Section 22949.80 aims to reduce demand for firearms—not just among minors, but also adults (i.e., the finding that adults may transfer *lawfully-owned* firearms)—it does what the Supreme Court has condemned: prevent consumers' supposedly "bad" but perfectly lawful "decisions" by denying them "truthful commercial information." A state "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements." *Sorrell*, 564 U.S. at 577–78.

(iv)    Section 22949.80 Is More Extensive than Necessary.

Section 22949.80 also fails the final step of the *Central Hudson* analysis, in which the government must prove "the speech restriction is not more extensive than necessary to serve the interests that support it." *Lorillard Tobacco*, 533 U.S. at 556 (citation and quotation marks omitted). This step reflects the view that, "[i]f the First Amendment means anything, it means that regulating speech must be a last— not first—resort." *Thompson*, 535 U.S. at 373. "[I]f the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* at 371–72.

The Supreme Court has consistently struck down broadly based bans on truthful, nonmisleading commercial speech designed to serve ends unrelated to consumer protection. *44 Liquormart*, 517 U.S. at 497–98. Although the Court has recognized that States may require commercial messages to "appear in such a form, or include such additional information, warnings, and disclaimers, as are necessary to prevent its being deceptive," *Va. Bd. of Pharmacy*, 425 U.S. at 772 n.24, the State has far less regulatory authority "when its commercial speech restrictions strike at 'the substance of the information communicated' rather than the 'commercial aspect of [it]—with offerors communicating offers to offerees.'" *44 Liquormart*, 517 U.S. at 498 (quoting *Linmark Assocs., Inc. v. Willingboro Twp.*, 431 U.S. 85, 96 (1977)).

- 29 -

SNELL & WILMER

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    The Ninth Circuit has likewise invalidated commercial speech regulations as

2    overinclusive where enforcement of preexisting laws would serve its interest

3    without burdening speech. *Valle Del Sol*, 709 F.3d at 826–27; *Project 80's, Inc. v.*

4    *City of Pocatello*, 942 F.2d 635, 638 (9th Cir. 1991) ("restrictions which disregard

5    far less restrictive and more precise means are not narrowly tailored").

6    In *Valle Del Sol*, the plaintiffs challenged an Arizona law barring in-street

7    solicitation of day laborers, which the state claimed was justified by its interest in

8    traffic safety. The court held that the solicitation ban failed the fourth step of the

9    *Central Hudson* test because Arizona could serve its interest without burdening

10   speech by enforcing its existing traffic safety regulations and by enacting additional

11   speech-neutral regulations. 709 F.3d at 826–27; *see Stevens*, 559 U.S. at 474–77.

12   Section 22949.80 fails the fourth prong of the *Central Hudson* test for the

13   same reasons. California comprehensively regulates the sale, purchase, and

14   possession of firearms, particularly by minors. It could achieve its interest in

15   preventing unlawful sales or transfers to minors by enforcing existing laws and

16   regulations. If such enforcement is insufficient, the Legislature can pass additional

17   direct regulations (within constitutionally permissible boundaries). *See Valle Del*

18   *Sol*, 709 F.3d at 826–27. The State could also take steps to achieve its asserted

19   interest that do not involve restricting protected speech. California could, for

20   example, conduct educational campaigns promoting responsible firearm use by

21   minors. Indeed, State agencies already promote such campaigns.[16]

22   California thus has ample alternative means to advance any legitimate state

23   interest without restricting speech. But Section 22949.80 restricts more speech than

24   necessary. The statute thus violates the First Amendment.

25

26   ───────────────

27   [16] *See, e.g.*, *California's In-Person Hunter Education Instruction Returns; Online Courses Remain a Permanent Option*, CAL. DEP'T OF FISH & WILDLIFE (Apr. 15, 2022), *available at* https://wildlife.ca.gov/News/californias-in-person-hunter-education-instruction-returns-online-courses-remain-a-permanent-option.

28

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**D.      Section 22949.80 Impermissibly Infringes Plaintiffs' Right to Associate.**

The First Amendment protects not only the right of free speech, but also "the right of the people peaceably to assemble." U.S. CONST., amend. I. The right to assemble is closely associated, and often merges, with the right to free expression. *Buckley v. Valeo*, 424 U.S. 1, 25 (1976); *Shelton v. Tucker*, 364 U.S. 479, 486 (1960). Because the "threat of sanctions may deter" the exercise of First Amendment freedoms "as potently as the actual application of sanctions," government may regulate expressive and associational conduct "only with narrow specificity." *Button*, 371 U.S. at 433; *see NAACP v. Patterson*, 357 U.S. 449, 461–62 (1958). The State must prove that the regulation is "necessary" to achieve a "compelling" and "legitimate" state interest. *Button*, 371 U.S. at 433, 438–39.

Section 22949.80 burdens associational conduct and, for the reasons discussed in preceding sections, the State cannot prove that the regulation is necessary to achieve a compelling and legitimate interest. Section 22949.80 infringes Plaintiffs' right to freely associate and assemble because it prohibits them from advertising or marketing their various firearm-related programs, where Plaintiffs and members of the public, including youths, peacefully and lawfully assemble and associate with each other. Likewise, it prohibits Plaintiffs from advertising or marketing events that they sponsor where firearm-related products are exhibited and sold—core Second Amendment-related activity—and where members of the public and youths often assemble with each other.

There is no compelling (or legitimate) government interest in prohibiting "firearm industry members" from advertising or marketing their firearm-related youth programming and services and the "firearm-related products" used, sold, endorsed, recommended, or advertised at such events. Section 22949.80 effectively puts an end to such events and, by extension, the rights of Plaintiffs to associate and assemble at them. *See Button*, 371 U.S. at 433–34. Even if the State's interests were compelling, they could be achieved through less drastic means. *See Wooley v.*

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*Maynard*, 430 U.S. 705, 716–17 (1977) ("The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose.").

**E.      Section 22949.80 Denies Plaintiffs Equal Protection of the Laws.**

The Fourteenth Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. Singling out speakers because of the content of their speech violates their fundamental rights under the Equal Protection Clause. U.S. CONST., amend. XIV. If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985). Indeed, "[b]ecause the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest." *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs. United v. Fed. Elec. Comm'n*, 558 U.S. 310 (2010).

As discussed, Section 22949.80 is a content- and speaker-based restriction on Plaintiffs' protected speech that serves no compelling governmental interest. The legislative history of Section 22949.80 evinces an intent to thwart the promotion and preservation of the nation's historical tradition of firearms ownership in California through the passing down of pro-gun attitudes and traditions to future generations. Section 22949.80 does not apply to similar or opposing speech made by businesses, organizations, or people who are not considered "firearm industry members." There is no legitimate interest in singling out politically disfavored "firearm industry members," while leaving members of other industries, like the popular entertainment and video game industries, as well as anti-gun organizations, free to engage in similar or identical speech.

- 32 -

## V.

## PLAINTIFFS WILL SUFFER IRREPARABLE HARM

Plaintiffs have "established a threatened and imminent irreparable harm that cannot be adequately compensated at a later time," so as to warrant injunctive relief. *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1052 (S.D. Cal. 2006). "Both [the Ninth Circuit] and the Supreme Court have repeatedly held that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Furthermore, "constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quotation marks omitted).

## VI.

## THE BALANCE OF THE EQUITIES TIPS IN PLAINTIFFS' FAVOR

The balance of equities tips in Plaintiffs' favor "because they have a significant First Amendment and economic interest in engaging in [the prohibited] speech," and California "need not impede that speech in order to pursue its" interests. *Valle Del Sol Inc.*, 709 F.3d at 828–29. If Section 22949.80 is not enjoined, Defendants will enforce this unconstitutional law against Plaintiffs, who will be forced to choose between sacrificing their First Amendment rights or incurring devastating financial penalties.

Conversely, an injunction would impose no administrative burden on the Defendants, nor threaten public safety since California's direct restrictions on the unlawful purchase, sale or possession of firearms would remain intact. Finally, California is not harmed by an injunction preventing it from enforcing an unconstitutional statute. *See Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011); *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

- 33 -

## VII.

## AN INJUNCTION IS IN THE PUBLIC INTEREST

The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people subjected to the same restrictions." *Klein*, 584 F.3d at 1208 (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). Conversely, enforcement of an unconstitutional law is against the public interest. *See e.g.*, *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012). In fact, a preliminary injunction would promote the public interest by allowing for the free flow of commercial information, the value of which has been repeatedly recognized by the Supreme Court. *See e.g.*, *Bates*, 433 U.S. at 364; *Va. Bd. of Pharmacy*, 425 U.S. at 765.

## VIII.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that a preliminary injunction be entered enjoining enforcement of Section 22949.80. Plaintiffs further request such other and additional relief as the Court deems just and proper.


Dated:  October 20, 2022                    Respectfully submitted,

                                            SNELL & WILMER L.L.P.


                                            By:_____
                                                Michael B Reynolds
                                                Colin R. Higgins
                                                Cameron J. Schlagel
                                                Attorneys for Plaintiffs

4889-1221-9950

- 34 -

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689