1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   ANTHONY R. HAKL, State Bar No. 197335
    Supervising Deputy Attorney General
3   GABRIELLE D. BOUTIN, State Bar No. 267308
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 210-6053
6     Fax:  (916) 324-8835
      E-mail:  Gabrielle.Boutin@doj.ca.gov
7   *Attorneys for Defendant Attorney General
    Rob Bonta, in his official capacity*

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13   **THE UNITED STATES SPORTSMEN'S**        2:22-cv-01395-DAD-JDP
     **ALLIANCE FOUNDATION, ET AL.,**
14                                            **DEFENDANT'S OPPOSITION TO**
                                 **Plaintiffs,**  **MOTION FOR PRELIMINARY**
15                                            **INJUNCTION**
     v.
16                                            Date:         December 13, 2022
                                              Time:         1:30 p.m.
17   **ROB BONTA, IN HIS OFFICIAL CAPACITY AS**  Dept:         Via Zoom
     **ATTORNEY GENERAL OF THE STATE OF**        Judge:        Hon. Dale A. Drozd
18   **CALIFORNIA, ET AL.,**                     Trial Date:   None set
                                              Action Filed:  August 5, 2022
19
                                 **Defendants.**
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.       Enactment of Section 22949.80 ............................................................................... 2

    II.     The Text of Section 22949.80 ................................................................................. 4

    III.    California's Restrictions on the Ownership, Possession, and Use of
           Firearms by Minors ............................................................................................... 5

LEGAL STANDARDS ............................................................................................................. 6

ARGUMENT ............................................................................................................................. 6

    I.       Plaintiffs Have Not Shown a Likelihood of Success on the Merits ...................... 6

           A.     Section 22949.80 Does Not Violate the First Amendment Right to
                 Free Speech ................................................................................................ 6

                1.      Section 22949.80 regulates commercial speech only .................... 6

                2.      The First Amendment does not protect the commercial
                       speech subject to Section 22949.80, because such speech
                       concerns unlawful activity and is misleading ............................... 8

                3.      Even if section 22949.80 regulates protected commercial
                       speech, the statute satisfies intermediate scrutiny ........................ 9

           B.     Section 22949.80 is Not Unconstitutionally Vague ................................. 13

           C.     Section 22949.80 Is Not Unconstitutionally Overbroad ......................... 15

           D.     Section 22949.80 Does Not Violate the Right to Association ................ 16

           E.     Section 22949.80 Does Not Violate Equal Protection ............................ 16

    II.     Plaintiff Cannot Establish Irreparable Harm Absent Injunctive Relief ............... 18

    III.    The Balance of Equities And Public Interest Weigh Against an Injunction ......... 18

CONCLUSION ......................................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page**

CASES

*Americans for Prosperity Found. v. Bonta*
(2021) 141 S. Ct. 2373 ......................................................................... 15, 16

*Ariix, LLC v. NutriSearch Corp.*
985 F.3d 1107 (9th Cir. 2021) ............................................................. 7

*Bates v. State Bar of Ariz.*
433 U.S. 350 (1977) ............................................................................. 12

*Bd. of Trustees of State Univ. of N.Y. v. Fox*
492 U.S. 469 (1989) ............................................................................. 12, 13

*Bolger v. Youngs Drug Prod. Corp.*
463 U.S. 60 (1983) ............................................................................... 7, 8

*Butcher v. Knudsen*
38 F.4th 1163 (9th Cir. 2022) ............................................................. 14

*California v. Azar*
911 F.3d 558 (9th Cir. 2018) ............................................................... 6

*Carter v. Welles-Bowen Realty, Inc.*
719 F. Supp. 2d 846 (N.D. Ohio 2010) ............................................. 15

*Central Hudson Gas & Elec. v. Public Svc. Comm'n*
447 U.S. 557 (1980) ............................................................................. *passim*

*City of Los Angeles v. Alameda Books, Inc.*
535 U.S. 425 (2002) (plurality opinion) ............................................. 9

*Coates v. City of Cincinnati*
402 U.S. 611 (1971) ............................................................................. 15

*Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*
847 F.2d 593 (9th Cir. 1988) ............................................................. 17

*Cox v. State of La.*
379 U.S. 536 (1965) ............................................................................. 15

*Disbar Corp. v. Newsom*
508 F. Supp. 3d 747 (E.D. Cal. 2020) ............................................... 6

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) ............................................................. 6

*Edenfield v. Fane*
  507 U.S. 761 (1993) ........................................................................... 11

*Educational Media Company at Virginia Tech. Inc. v. Swecker*
  602 F.3d 583 (4th Cir. 2010) ............................................................. 12

*First Resort, Inc. v. Herrera*
  860 F.3d 1263 (9th Cir. 2017) ...................................................... 13, 14

*Fla. Bar v. Went For It, Inc.*
  515 U.S. 618 (1995) ........................................................................... 11

*FTC. v. Affordable Media*
  179 F.3d 1228 (9th Cir. 1999) ........................................................... 18

*Greater New Orleans Broadcasting Ass'n, Inc. v. United States*
  527 U.S. 173 (1999) ........................................................................... 12

*Harrison v. PPG Indus.*
  446 U.S. 578 (1980) ........................................................................... 14

*Hennessy-Waller v. Snyder*
  529 F. Supp. 3d 1031 (D. Ariz. 2021) ............................................... 19

*Human Life of Wash. Inc. v. Brumsickle*
  624 F.3d 990(9th Cir. 2010) .............................................................. 14

*Hunt v. City of Los Angeles*
  638 F.3d 703 (9th Cir. 2011) ............................................................... 7

*In re R. M. J.*
  455 U.S. 191 (1982) ............................................................................. 8

*Jones v. Becerra*
  498 F. Supp. 3d 1317 (S.D. Cal. 2020) ............................................... 5

*Junior Sports Magazines, Inc. v. Bonta*
  No. 2:22-cv-04663-CAS, 2022 WL 14365026 (C.D. Cal. Oct. 24, 2022) .................... *passim*

*Lorillard Tobacco Co. v. Reilly*
  533 U.S. 525 (2001) ........................................................................... 13

*Nunez by Nunez v. City of San Diego*
114 F.3d 935 (9th Cir. 1997) ........................................................................ 10

*OSU Student All. v. Ray*
699 F.3d 1053 (9th Cir. 2012) ...................................................................... 17

*Pena v. Lindley*
898 F.3d 969 (9th Cir. 2018) ........................................................................ 17

*Plyler v. Doe*
457 U.S. 202 (1982) ...................................................................................... 16

*Progressive Democrats for Soc. Just. v. Bonta*
No. 21-CV-03875-HSG, 2021 WL 6496784 (N.D. Cal. July 16, 2021) ........... 18

*Sable Commc'ns of California, Inc. v. F.C.C.*
492 U.S. 115 (1989) ...................................................................................... 10

*Saia v. New York*
334 U.S. 558 (1948) ...................................................................................... 15

*Shuttlesworth v. City of Birmingham, Ala.*
394 U.S. 147 (1969) ...................................................................................... 15

*Silveira v. Lockyer*
312 F.3d 1052 (9th Cir. 2002) ...................................................................... 17

*Sorrell v. IMS Health*
564 U.S. 552 (2011) ...................................................................................... 12

*Staub v. City of Baxley*
355 U.S. 313 (1958) ...................................................................................... 15

*Tracy Rifle & Pistol LLC v. Harris*
118 F. Supp. 3d 1182 (E.D. Cal. 2015) ......................................................... 18

*Turner Broad. Sys., Inc. v. FCC*
520 U.S. 180 (1997) ........................................................................................ 9

*United States v. Edge Broad. Co.*
509 U.S. 418 (1993) ................................................................................... 9, 11

*United States v. Hansen*
25 F.4th 1103 (9th Cir. 2022) ...................................................................... 15

*United States v. Williams*
553 U.S. 285 (2008)...................................................................... 15

*Va. State Pharmacy Bd v. Va. Citizens Consumer Council*
425 U.S. 748 (1976)...................................................................... 12

*Valle Del Sol v. Whiting*
709 F.3d 808 (9th Cir. 2013) .................................................7, 8, 12, 13

*Ward v. Rock Against Racism*
491 U.S. 781 (1989)................................................................. 13, 15

*Winter v. Natural Res. Def. Council, Inc.*
555 U.S. 7 (2008).......................................................................... 6

STATUTES

California Business and Professions Code
§ 22949.80 ......................................................................... *passim*
§ 22949.80(a)(1) .................................................................... *passim*
§ 22949.80(a)(2) ...............................................................4, 14, 15
§ 22949.80(a)(3) .............................................................1, 13, 16
§ 22949.80(c)(3) ................................................................... 4, 14
§ 22949.80(c)(4) ....................................................................... 17
§ 22949.80(c)(5) ................................................................ 4, 9, 14
§ 22949.80(c)(6) ................................................................ 5, 7, 12
§ 22949.80(f) ............................................................................ 5
§ 25664 ................................................................................. 11

California Penal Code
§ 16520 .................................................................................. 5
§ 27505 ............................................................................ 5, 6, 8
§ 27505(b)(2) ........................................................................... 5
§ 27510 .............................................................................. 5, 8
§ 29610 .............................................................................. 5, 8
§ 29615 ............................................................................ 5, 6, 8

CONSTITUTIONAL PROVISIONS

First Amendment ................................................................. *passim*

Second Amendment ........................................................... 1, 8, 17

# TABLE OF AUTHORITIES
## (continued)

**OTHER AUTHORITIES**

Assembly Bill 2571
   § 1.................................................................................................................... 8, 10
   § 1(a) ..............................................................................................................3, 10, 18

Equal Protection Clause ......................................................................................... 16

**INTRODUCTION**

Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction barring enforcement of California Business and Professions Code section 22949.80 in its entirety. Their motion is based on a misreading of the statute: section 22949.80 regulates only the advertising, marketing, or arranging for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors. § 22949.80(a)(1). The statute expressly does not regulate communications that merely relate to firearm programs, events, and competitions. § 22949.80(a)(3). It therefore does not restrict core political speech about guns or conduct protected by the Second Amendment, but rather commercial speech only.

As a regulation of commercial speech, section 22949.80 is subject not to strict scrutiny, but to the less demanding analysis set forth in *Central Hudson Gas & Elec. v. Public Svc. Comm'n*, 447 U.S. 557 (1980). Under that analysis, the First Amendment does not protect the commercial speech subject to section 22949.80—the advertising and marketing of guns to children—because children are legally barred from purchasing them. And, to the extent the statute regulates commercial speech about lawful activity, it satisfies *Central Hudson*'s intermediate scrutiny test because it directly advances a substantial government interest in public safety—reducing gun violence and crime, especially those affecting and committed by minors—and is no more restrictive than necessary to serve that interest.

Plaintiffs' constitutional claims unrelated to free speech also fail. Section 22949.80 is not unconstitutionally vague: it sufficiently defines the types of "firearm-related accessories" subject to the statute and provides fact-based standards for courts to apply to determine whether the subject communications target minors. The statute is not overbroad because its applications are constitutional. Section 22949.80 does not implicate the right to free association under the First Amendment because the statute as amended clarifies that communications related to firearm programs, events, and competitions are outside its scope. Finally, section 22949.80 does not violate equal protection because its limited application to "firearm industry members" serves the

legitimate purpose of focusing on the source of the advertisements targeting minors, rather than on the dissemination of that content.

For these reasons, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their constitutional claims or any of the other factors considered for injunctive relief, just as their counterparts recently failed to do in a related case in the Central District of California. *See Junior Sports Magazines, Inc. v. Bonta*, No. 2:22-cv-04663-CAS, 2022 WL 14365026 (C.D. Cal. Oct. 24, 2022) (order denying preliminary injunction against enforcement of section 22949.80). This Court should also deny Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

### I. ENACTMENT OF SECTION 22949.80

Section 22949.80 is the State of California's reasonable legislative approach to an urgent nationwide crisis. Among other things, it restricts the marketing and advertising of firearm products to minors, attaches financial penalties for violations, and authorizes private enforcement.

Section 22949.80 was originally enacted in Assembly Bill (AB) 2571, which went into effect as an urgency statute on June 30, 2022. (Assem. Bill No. 2571 (2021–2022 Reg. Sess.) AB 2571 was a product not only of years of professional research and scholarship on youth gun violence and the influence of advertising and marketing on children and adolescents, but also common sense. The legislative history of AB 2571, including academic literature and other materials considered by the Legislature, bear this out. The materials included reports and data on firearm-related injuries and deaths among minors, and the recent rise in their incidence such that, in 2020, firearm-related injuries became the leading cause of death nationwide among children and adolescents. *See* Request for Judicial Notice in Support of Plaintiffs' Motion for Preliminary Injunction ("RJN"), Exhibit 5 at 5-7; *id.*, Exh. 6 at 1; Declaration of Gabrielle D. Boutin ("Boutin Dec."), Exh. A (Violence Policy Center, Start Them Young (2016)) at 40; *id.*, Exh. B (Jason E. Goldstick, Ph.D. et al, Current Causes of Death in Children and Adolescents in the United States, 386 New Eng. J. Med. 1955, (2022)).

AB 2571 also reflects the fact that "[f]or decades, researchers have recognized children as a vulnerable consumer group because of their budding developmental abilities." Boutin Dec.,

Exh. C (Matthew A. Lapierre, Ph.D. et al., *The Effect of Advertising on Children and Adolescents*, 140 Pediatrics S152, S153 (2017)). For example, research has linked the marketing of certain products, including unhealthy food, alcohol, and tobacco, to an increased likelihood that adolescents will use these products. *See id.*; *see also* RJN, Exh. 2 at 11-12. Moreover, "research indicates that possessing advertising knowledge does not necessarily enable children to cope with advertising in a conscious and critical manner." Boutin Dec., Exh. C at S154.

It was with these concerns in mind that the Legislature enacted AB 2571, finding that California "has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." AB 2571, § 1(a). "The proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." *Id.*

The Legislature further determined that "[t]hese weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions and decisions, and less able to control themselves in emotionally arousing situations." *Id.* Despite these risks, and the fact that "children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups," "firearms manufacturers and retailers continue to market firearms to minors." *See id.*

Section 22949.80 was subsequently amended by AB 160, a public safety trailer bill, which the Governor signed into law on September 30, 2022. Assem. Bill No. 160 (2021–2022 Reg. Sess.) Among other things, the amendment expressly clarified that the statute does not apply to advertising communications for classes or events related to firearm safety, hunting, sport shooting, or promoting membership in an organization. AB 160's amendments became immediately effective. *See* Cal. Bus. & Prof. Code § 22949.80.

## II. THE TEXT OF SECTION 22949.80

The central provision of section 22949.80 provides: "A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." § 22949.80(a)(1). The statute directs courts to look to the "totality of the circumstances" to determine whether the marketing or advertising is attractive to minors, and the statute provides a non-exclusive list of characteristics to assist courts in making that determination. *See id.* § 22949.80(a)(2).

Since the passage of AB 160, the statute has provided specific clarification regarding communications *outside* the scope of its prohibition. Subdivision (a)(3) of section 22949.80 states:

> This subdivision does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

Section 22949.80 also defines key terms. A "firearm-related product" is defined as "a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory" that meets specified criteria related to presence in California. § 22949.80(c)(5).

A "firearm accessory" is defined as "an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm." § 22949.80(c)(3).

The statute defines "marketing or advertising" as: "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the

public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." § 22949.80(c)(6)[1].

Section 22949.80 expressly states that its provisions are severable and that if any portion or application of the statute is deemed invalid by any court, "that decision shall not affect the validity of the remaining portions of this chapter." § 22949.80(f).

## III. CALIFORNIA'S RESTRICTIONS ON THE OWNERSHIP, POSSESSION, AND USE OF FIREARMS BY MINORS

Section 22949.80 restricts advertising and marketing in a narrow field that is already closely regulated. California law generally prohibits the sale, loan, or transfer of any firearm to a person under 21 years of age, with certain enumerated exceptions. *See* Cal. Pen. Code §§ 27505 & 27510. Furthermore, minors – those under the age of 18 – are generally prohibited from possessing a handgun, a semiautomatic centerfire rifle,[2] and, as of July 1, 2023, any firearm. *See* Cal. Pen. Code § 29610.[3] There are very limited exceptions to these prohibitions, which allow a minor to possess or be loaned a firearm for certain limited purposes and under very specific circumstances. *See, e.g., id.* § 27505(b)(2) (permitting the loan of a firearm to a minor by the minor's parent or legal guardian for lawful recreational, agricultural, hunting, or artistic performance purposes, and for no longer than is reasonably necessary); *id.* § 29615 (permitting a minor to possess a firearm for lawful recreational, agricultural, hunting, or artistic performance purposes if accompanied by a parent or adult guardian and/or with the prior written consent of a

---

[1] Plaintiff's motion incorrectly recites the former definition of "marketing or advertising" that was amended by AB 160. Mtn. at 12. The definition no longer encompasses communications about "services," only "products." § 22949.80.

[2] Semiautomatic centerfire rifles are "'able to fire repeatedly through an automatic reloading process but requiring release and another pressure of the trigger for each successive shot' using 'centerfire' ammunition in which a primer is located in the center of the cartridge case head, rather than in the rim." *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1322 (S.D. Cal. 2020), *aff'd in part, rev'd in part and remanded sub nom. Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022), *and vacated and remanded sub nom. Jones v. Bonta*, 47 F.4th 1124 (9th Cir. 2022).

[3] For purposes of California Penal Code section 29610, a "firearm" is generally "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion," and includes "the frame or receiver of the weapon, including both a completed frame or receiver, or a firearm precursor part." Cal. Pen. Code § 16520.

parent or adult guardian and/or accompanied by a responsible adult). All of these permitted uses require the supervision and/or permission of a parent, legal guardian, and/or a responsible adult, depending on the item's use and, in some cases, the age of the minor. *See* Cal. Pen. Code §§ 27505 & 29615.

## LEGAL STANDARDS

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "In cases where the movant seeks to alter the status quo," injunctive relief is "disfavored and a higher level of scrutiny must apply." *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 751 (E.D. Cal. 2020).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government is a party, these last two factors," balance of the equities and public interest, "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (same). Analysis of the first factor (i.e., likelihood of success on the merits) is a "threshold inquiry," and thus if a movant fails to establish that factor, the court "need not consider the other factors." *Azar*, 911 F.3d at 575.

## ARGUMENT

## I. PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Section 22949.80 Does Not Violate the First Amendment Right to Free Speech

#### 1. Section 22949.80 regulates commercial speech only

The Supreme Court has long distinguished between "commercial speech"—that is, "speech proposing a commercial transaction"—and other types of speech, which may enjoy greater First Amendment protection. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562 (1980). Factors to be considered in deciding whether speech constitutes "commercial speech" include whether (1) the speech is an advertisement; (2) the speech refers to

6

a particular product; and (3) the speaker has an economic motivation. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011). These factors are "not dispositive" (*Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021)), and not all of these factors "must necessarily be present in order for speech to be commercial" (*Bolger*, 463 U.S. at 67 n.14).

Here, section 22949.80 regulates only commercial speech. *See Junior Sports Magazines*, 2022 WL 14365026, at *14. It prohibits a "firearm industry member" from *advertising, marketing, or arranging for placement of an advertising or marketing communication offering or promoting* any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors. § 22949.80(a)(1) (emphasis added). Thus, it regulates speech with an obvious economic or commercial motivation. *See Hunt*, 638 F.3d at 715. The statute also defines "marketing or advertising" with reference to commercial transactions, i.e., those involving a proposed "commercial transaction." *See* § 22949.80(c)(6). Thus, 22949.80 regulates speech constituting an "advertisement." *See Hunt*, 638 F.3d at 715. Section 22949.80 also explicitly regulates advertising and marketing in connection with a "particular product" (*see id.*), that is, "firearm-related products" (§ 22949.80(a)(1)). Therefore, all of the hallmarks for applying commercial speech doctrine are present here.

Plaintiffs argue that section 22949.80 is subject to heightened scrutiny when an advertisement is "inextricably intertwined with core political and economic messages," and therefore regulates core political speech. Mtn. at 20. However, "advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 68 (1983) (*quoting Central Hudson*, 447 U.S. at 563, n. 5.) The Ninth Circuit applied this rule in *Valle Del Sol v. Whiting*, 709 F.3d 808 (9th Cir. 2013). There, provisions of an Arizona state immigration reform bill made it illegal for a motor vehicle occupant to solicit or hire a day laborer if the vehicle impeded traffic. *Valle Del Sol*, 709 F.3d at 815. The plaintiffs argued that the law burdened core First Amendment speech that was "inextricably intertwined with core political and economic messages." *Id.* at 818. The Ninth Circuit disagreed and ruled that the law regulated only commercial speech. *Id.* at 819. Citing the *Bolger* rule, the court reasoned, "[t]he act of soliciting

work as a day laborer may communicate a political message, but the primary purpose of the communication is to advertise a laborer's availability for work and to negotiate the terms of such work." *Id.*

Here, section 22949.80 merely prohibits advertisements of tangible firearm-related products that target minors. § 22949.80(a)(1); *see also* AB 2571, § 1 (statements of legislative intent). Plaintiffs have identified no examples of any advertisements that are "inextricably intertwined" with core political speech related to the Second Amendment. *See* Mtn. at 20. Even if they had, this would, at most, merely "link[] a product" (a firearm) "to a current public debate" (the one surrounding the Second Amendment). *Bolger*, 463 U.S. at 68. *Bolger* is clear that this is insufficient to transform commercial speech into noncommercial speech. *Id.* Moreover, analogizing to the Ninth Circuit's reasoning in *Valle Del Sol*, even if a firearm advertisement aimed at minors communicated a political message, the primary purpose of the communication would be to sell the product advertised.

        **2.    The First Amendment does not protect the commercial speech subject to Section 22949.80, because such speech concerns unlawful activity and is misleading**

For commercial speech to enjoy First Amendment protection, "it at least must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566. "[W]hen the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions." *In re R. M. J.*, 455 U.S. 191, 203 (1982).

Section 22949.80 regulates commercial speech not protected by the First Amendment. The statute regulates misleading speech concerning unlawful acticity because it prohibits advertising and marketing for the sale of a product that the target audience is legally barred from purchasing. It is illegal in California to sell a firearm to a minor under any circumstances, and illegal to loan or transfer any firearm to a person under 21 years of age, subject to narrow exceptions. *See* Cal. Pen. Code §§ 27505, 27510, & 29615. California law also generally prohibits a minor from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm. *See* Cal. Pen. Code § 29610. Exceptions to these prohibitions are quite narrow and carefully

circumscribed. Moreover, in each and every circumstance in which a minor is permitted to possess a gun, adult supervision or permission in some form is required, for obvious safety reasons.

Section 22949.80 therefore regulates commercial speech respecting unlawful activity—the sale of guns to minors. For the same reason, the commercial speech that is subject to section 22949.80 is also misleading. It is inherently misleading to advertise the sale of a product (a firearm) to an audience (minors) that is legally barred from purchasing the product being advertised. It is also misleading to advertise to minors the sale of firearm ammunition or a firearm components (i.e. a "firearm-related products," *see* § 22949.80(c)(5)) when they cannot purchase the firearm necessary for their use.

Because section 22949.80 regulates only commercial speech, and because that speech concerns unlawful activity and is misleading, the statute does not violate the First Amendment. *See Central Hudson*, 447 U.S. at 566.

### 3. Even if section 22949.80 regulates protected commercial speech, the statute satisfies intermediate scrutiny

Regulations of protected commercial speech are reviewed under a form of intermediate, not strict, scrutiny. *See Central Hudson*, 447 U.S. at 563-66. A government regulation of commercial speech will be upheld so long as: (i) the government asserts a substantial interest, (ii) the regulation directly advances the government's asserted interest, and (iii) the regulation is no more restrictive than necessary to serve that interest. *See Central Hudson*, 447 U.S. at 564.

When applying intermediate scrutiny, courts give "substantial deference to the predictive judgments of [the legislature]." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (internal quotation and citation omitted); *see also United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993) ("Within the bounds of the general protection provided by the Constitution to commercial speech, we allow room for legislative judgments"). The legislature may rely on evidence "reasonably believed to be relevant to the problem" (*id.* at 51) and such evidence need not be empirical (*see, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002) (plurality opinion) (explaining that city did not need empirical data to support its conclusion that

9

adult-bookstore ordinance would lower crime)).  Section 22949.80 satisfies intermediate scrutiny because it directly advances the State's substantial interest and is no more extensive than necessary to serve that interest.  *Junior Sports Magazines*, 2022 WL 14365026, at *23, 28.

(i) Section 22949.80 serves a substantial government interest

Section 22949.80 satisfies the first requirement of the *Central Hudson* test because "California has a substantial interest in promoting public safety broadly, along with the more specific goals to reduce gun violence and crime, especially those affecting and committed by minors."  *Junior Sports Magazines*, 2022 WL 14365026, at *16.  Indeed, a state has not only "a compelling interest in protecting the physical and psychological well-being of minors" (*Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)), but it also "may have a compelling interest in protecting minors from certain things that it does not for adults."  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 945 (9th Cir. 1997).

Consistent with these principles, AB 2571 declares that the State has "a compelling interest in ensuring minors do not possess these dangerous weapons [*i.e.*, firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons."  *See* AB 2571, § 1.  These are undeniably compelling interests.

The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state."  *Id.*, § 1(a).  These findings are borne out by facts and reports, including those in the legislative record.  *See id.*, Exhs. 5 at 9, 6 at 1-2; Boutin Dec., Exhs. C at 1955, D.  For example, "[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries."  *See* RJN, Exh. 5 at 9.  Furthermore, to date, there have been at least 238 unintentional shootings by children in 2022, resulting in 106 deaths and 145 injuries nationally.  *See* Everytown Research & Policy, *#NotAnAccident Index*, https://everytownresearch.org/maps/notanaccident (last visited November 2, 2022), attached to the Boutin Dec. as Exh. D.  And in 2020, for the first time, firearms-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide for children and adolescents.  *See* RJN, Exh. 6 at 1; Boutin Dec., Exh. C at 1955.

(ii) Section 22949.80 directly advances the government's asserted interest

2    Section 22949.80 satisfies the second requirement of *Central Hudson*'s intermediate

3    scrutiny test because the statute directly advances the State's asserted public safety interests.

4    *Junior Sports Magazines*, 2022 WL 14365026, at *21.  For this requirement, a state must show

5    "that the harms it recites are real and that its restriction will in fact alleviate them to a material

6    degree."  *Edenfield v. Fane*, 507 U.S. 761, 762 (1993).  Nevertheless, "empirical data [need not]

7    come . . . accompanied by a surfeit of background information," and such restrictions may be

8    "based solely on history, consensus, and simple common sense."  *Fla. Bar v. Went For It, Inc.*,

9    515 U.S. 618, 628 (1995) (quotation marks omitted).  Of particular relevance here, courts have

10   long held that the government may directly advance a government interest by restricting

11   advertising in order to dampen a product's demand. [4]  *See, e.g.*, *Edge Broad.*, 509 U.S. at 434 ("If

12   there is an immediate connection between advertising [for gambling] and demand, and the federal

13   regulation decreases advertising, it stands to reason that the policy of decreasing demand for

14   gambling is correspondingly advanced.");  *see also Junior Sports Magazines*, 2022 WL 14365026,

15   at *19-21 (examining cases).

16       As described above, the Legislature found – and the factual record it relied on

17   demonstrates – that the illegal possession of firearms by minors creates serious health and safety

18   risks to children and other residents of this state, including through both intentional and

19   unintentional shootings.  *See, e.g.*, Boutin Decl., Exh. A at 40; *id.*, Exh. B; RJN, Exh. 6 at 1.

20   Section 22949.80's prohibition on advertising targeting minors directly advances the State's

21   interest in minimizing those risks because studies have linked the influence of advertising to the

22   use of certain products by youth.  *See* RJN, Exh. 2 at 12; Boutin Decl., Exh. C at S153.

23   Conversely, studies have shown that *restrictions* on advertising are associated with the *decreased*

24   use of certain products by youth.  RJN, Exh. 2 at 12.  This evidence, along with "simple common

25   sense," demonstrates that a decrease in firearm advertising attractive to minors will alleviate the

26   problem of minors' unsafe use of firearms.  *Fla. Bar v. Went For It, Inc.*, 515 U.S. at 628.

27   

28       [4] Indeed, the State uses a similar policy approach in regulating alcohol advertising aimed
at minors.  *See* Cal. Bus. & Prof. Code § 25664.

Plaintiffs argue that section 22949.80's prohibition advances the state's interests too indirectly to satisfy intermediate scrutiny, analogizing to *Virginia State Pharmacy Board* and *Bates*. Those cases are inapposite. Both relate chiefly to whether blanket bans on advertising (by pharmacists and attorneys, respectively) directly advance professional standards and professional performance. *Va. State Pharmacy Bd v. Va. Citizens Consumer Council*, 425 U.S. 748, 766 (1976); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 378 (1977); *see also Junior Sports Magazines*, 2022 WL 14365026, at *22. Moreover, the Supreme Court's concerns about paternalism toward "sophisticated and experienced" consumers do not apply here because the subject audience here is children. *Sorrell v. IMS Health*, 564 U.S. 552, 577 (2011); *Junior Sports Magazines*, 2022 WL 14365026, at *22.

### (iii) Section 22949.80 is no more restrictive than necessary to serve the asserted interest

Under the third prong of the relevant intermediate scrutiny test, a restriction on commercial speech must not be "more extensive than necessary to serve the interests that support it." *Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999). "The test is sometimes phrased as requiring a reasonable fit between government's legitimate interests and the means it uses to serve those interests." *Valle Del Sol Inc.*, 709 F.3d at 825 (internal quotation omitted). The law need "not necessarily [be] the single best disposition but one whose scope is in proportion to the interest served . . . ." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). So long as a statute falls within those bounds, courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Id.*

Here, section 22949.80 is no more restrictive than necessary—there is a "reasonable fit" between its means and ends due to careful tailoring. First, the statute regulates only a narrow set of commercial speech: offers for the sale of firearms and their components. § 22949.80(a)(1), (c)(6). Second, the statute applies only to those who "market or advertise" firearm-related products, which it defines. § 22949.80(a)(1), (c)(6). Third, section 22949.80 does not prohibit all advertisements of firearms and firearm accessories, only ads targeted toward minors. § 22949.80(a)(1). This approach properly limits the statute to only certain advertisement audiences. *Junior Sports Magazines*, 2022 WL 14365026, at *26; *see also Educational Media*

12

1   *Company at Virginia Tech. Inc. v. Swecker*, 602 F.3d 583, 587 (4th Cir. 2010) (prohibition on ads

2   only in publications distributed primarily to college students under 21).  Fourth, the statute

3   applies only to advertisements and marketing for the sale of firearms and firearm-related products

4   themselves, while expressly excluding communications related to firearm programs and activities.

5   § 22949.80(a)(3).

6       The statute's totality of the circumstances test, moreover, ensures narrow tailoring so that

7   no one factor is outcome-determinative.  *Junior Sports Magazines*, 2022 WL 14365026, at *28

8   (totality of the circumstances test serves to identify and target certain advertising practices, which

9   is "the exact work required by the First Amendment" (*quoting Lorillard Tobacco Co. v. Reilly*,

10   533 U.S. 525, 563 (2001))).

11       Plaintiffs argue that section 22949.80 is more extensive than necessary because the

12   Legislature could seek to improve firearm safety by means other than regulating advertising.

13   Mtn. at 30.  However, when tailoring commercial speech, "[t]he least restrictive means is not the

14   standard." *Lorillard*, 533 U.S. at 556.  Rather, there need only be a "reasonable fit" between the

15   government's means and ends (*Valle Del Sol Inc.*, 709 F.3d at 825), and the scope of the

16   regulation must be in proportion to the interest served (*Bd. of Trustees of State Univ. of N.Y.*, 492

17   U.S. at 480).  Thus, in *Valle Del Sol*, the court ultimately held that there was not a reasonable fit

18   between law's ends ("traffic flow and safety") and its means (banning day laborer solicitation)

19   because existing traffic laws, and potential traffic safety regulations, were sufficient to solve the

20   problem.  *Valle Del Sol Inc.*, 709 F.3d at 826-27.  In contrast here, section 22949.80's addresses

21   an increasingly grave public health and safety issue that is not susceptible to simple alternative

22   solutions.

23   **B.**    **Section 22949.80 is Not Unconstitutionally Vague**

24       "A law is unconstitutionally vague if it does not provide a reasonable opportunity to know

25   what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory

26   enforcement." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017) (internal

27   quotation omitted).  However, "perfect clarity and precise guidance have never been required

28   even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781,

13

794 (1989). "[L]aws that confer some amount of flexibility in their application do not invariably trigger vagueness concerns." *Butcher v. Knudsen*, 38 F.4th 1163, 1176 (9th Cir. 2022).

Section 22949.80 is not unconstitutionally vague in either manner proposed by Plaintiffs.

First, the statute's definition of "firearm-related accessories" is not vague. Mtn. at 17. "Firearm accessories" are one several enumerated types of "firearm-related products" subject to the advertising prohibition. *See* § 22949.80(a)(1), (c)(5). All of the other specified "firearm-related products" consist of firearm components or ammunition, § 22949.80(c)(5), and the statute expressly defines "firearm accessories" likewise to include only "attachment[s]" and "device[s]." § 22949.80(c)(3). Textually, there is no vagueness: the prohibition applies only to attachments and devices for firearms (and not ancillary products). Even assuming some ambiguity exists, allegedly vague language should be viewed in the context of the challenged law as a whole. *See First Resort*, 860 F.3d at 1274. "Otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity." *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021(9th Cir. 2010) (citation and internal quotation omitted). As noted, the other specified "firearm-related products" consist of firearm components or ammunition, and the term "firearm accessories" must be read in that context. Under the rule of *ejusdem generis* (of the same kind, class, or nature), firearm accessories therefore include only "other items akin to" firearm components or ammunition. *See Harrison v. PPG Indus.*, 446 U.S. 578, 588 (1980). Thus, "firearm accessories" does not include general items that one might also use for non-firearm-related activities, such as backpacks, goggles, and ear plugs. The definition of "firearm accessories" is therefore sufficiently definite.

Second, section 22949.80 is not unconstitutionally vague merely because the statute directs courts to consider the totality of the circumstances when evaluating whether an advertising or marketing communication targets minors. Mtn. at 17. To the contrary, the statute provides strong guidance by enumerating six factors for the court to consider, each of which goes to the heart of whether an advertisement "is designed, intended, or reasonably appears to be attractive to minors." § 22949.80(a)(1), (2). They include whether the ad: (1) uses cartoon characters; (2) includes accompanying children's merchandise; (3) offers child-sized firearm products; (4) is

14

part of a child-oriented marketing campaign; (5) depicts minors; and (6) features in a publication whose audience is predominantly composed of minors. § 22949.80(a)(2)(A)-(F). These are not subjective considerations, as Plaintiff suggests. For at least five of the six factors (1, 2, 3, 5, 6) a court can make a fact-based assessment of the advertisement and the publication. The sizes of merchandise and the publication demographics, for example, are not susceptible to subjective opinion. The remaining factor, whether the ad is part of a child-oriented marketing campaign, may also be fact-driven and is an important contextual consideration within which to consider the other evidence. The inquiry is therefore unlike a law requiring a court to impose its subjective opinion regarding what is "annoying" (*Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971), a "breach of the peace" (*Cox v. State of La.*, 379 U.S. 536, 551 (1965)), or "reasonable, "sufficient" and "substantial" (*Carter v. Welles-Bowen Realty, Inc.*, 719 F. Supp. 2d 846, 852 (N.D. Ohio 2010), *aff'd*, 736 F.3d 722 (6th Cir. 2013)). Section 22949.80 is also unlike laws that expressly grant authorities virtually unfettered discretion to limit free expression. *See Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 149 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 321 (1958); *Saia v. New York*, 334 U.S. 558, 559-60 (1948).) Thus, the Constitution does not require the section 22949.80 to provide any more "precise guidance" than the statute currently does. *Ward*, 491 U.S. at 794.

### C. Section 22949.80 Is Not Unconstitutionally Overbroad

In First Amendment cases, a law may be invalidated as overbroad only "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta* (2021) 141 S. Ct. 2373, 2387; *accord United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir. 2022). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (quotations omitted).

Because its applications are constitutional, section 22949.80 is not overbroad. As explained above, the statute does not violate the First Amendment. It applies only to commercial speech, regulates speech that is unprotected because the speech concerns unlawful and misleading activity and, in any event, satisfies intermediate scrutiny. Section 22949.80 does not regulate

communications regarding youth shooting events, competitions and education programs.

§ 22949.80(a)(3); *see* Mtn. at 19. The statute has expressly clarified this since it was amended by AB 160. *See id.* Section 22949.80 therefore constitutionally applies only to commercial speech and is therefore not overbroad.

### D. Section 22949.80 Does Not Violate the Right to Association

Section 22949.80 also does not violate Plaintiffs' First Amendment right to association or assembly. *See* U.S. CONST., amend. I. The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Americans for Prosperity Found.*, 141 S. Ct. at 2382 (*quoting Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)).

Plaintiffs argue that the statute prohibits them from "advertising or marketing their various firearm-related programs, where Plaintiffs and members of the public, including youths, peacefully and lawfully assemble and associate with each other." Mtn. at 31. They also assert that the statute prohibits them from marketing events they sponsor where firearm-related products are exhibited and sold." *Id.*

Plaintiffs once again err regarding the scope of section 22949.80 following the passage of AB 160. Under subdivision (a)(3), communications promoting these types of firearm-related *programs and events*, as opposed to firearm-related products themselves, are not subject to section 22949.80's prohibitions. § 22949(a)(3). Since the statute does not affect Plaintiffs rights to promote these programs and events, it does not affect or infringe on Plaintiffs' right to associate and assemble. *See Junior Sports Magazines*, 2022 WL 14365026, at *29.

### E. Section 22949.80 Does Not Violate Equal Protection

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (*quoting F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). "But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* (internal quotation and brackets omitted) (*quoting Tigner v. Texas*, 310 U.S. 141, 147 (1940)).

"The first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). Here, the statute applies only to "firearm industry members." § 22949.80(a)(1); *see also* Mtn. at 32.

The next step is to determine the level of scrutiny. *Country Classic Dairies*, 847 F.2d at 596. "[I]f a legislative act neither affects the exercise of a fundamental right,[5] nor classifies persons based on protected characteristics, then that statute will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002) (internal quotation omitted). Here, rational basis review applies because, as Plaintiffs appear to concede, firearm industry members are not a protected class. *See* Mtn. at 31. And, section 22949.80 satisfies rational basis review.

As explained above, the state's interest here in the safety of minors is not just rational, but compelling. In addition, section 22949.80's regulation of firearms industry members—who are defined as persons or entities who engage in manufacturing, distributing, selling, or promoting firearm-related products (*see* § 22949.80(c)(4))—is rationally related to those interests. The Assembly Judiciary Committee explained the rationale for focusing on this group in its report on AB 2571:

> This bill focuses on advertising and marketing materials that are promulgated by a narrowly defined group of commercial speakers the firearm industry rather than on publishers, or even advertisers, in general. Given that these are the only groups that generally engage in this type of commercial speech, the means used by the bill seem narrowly tailored to address the source of the harmful marketing and advertising content, rather than focused on its dissemination.

*See* RJN, Exh. 2 at 11. The Legislature thus drew a reasonable line on who should be legally responsible for the harmful advertising.

Section 22949.80's distinction between members of the firearms industry and other speakers satisfies rational basis review and does not violate equal protection.

---

[5] Where speech is the only fundamental right underpinning an equal protection claim, the claim "rise[s] and fall[s] with the First Amendment claims." *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012); *cf. Pena v. Lindley*, 898 F.3d 969, 986 (9th Cir. 2018) (equal protection claim subsumed by Second Amendment claim where "fundamental right" at issue arises from the Second Amendment).

## II. PLAINTIFF CANNOT ESTABLISH IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Even if Plaintiffs were able to demonstrate a likelihood of success on the merits, they would still need to establish that they would suffer irreparable harm if an injunction were not issued. It is true that a loss of First Amendment freedoms can constitute "irreparable harm" for purposes of seeking injunctive relief. Mtn. at 33. But as demonstrated above, section 22949.80 does not burden Plaintiffs' First Amendment or other constitutional rights. They have therefore failed to show they will suffer irreparable harm if their motion is denied.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION

Finally, the balance of the equities (which, where the defendant is a government official, includes analysis of the public interest) weighs against a preliminary injunction. When a district court balancing the hardships of the public interest against a private interest, "the public interest should receive greater weight." *FTC. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999).

Section 22949.80 promotes "a compelling interest in ensuring that minors do not possess these dangerous weapons [i.e., firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." *See* AB 2571, § 1(a). Indeed, Plaintiffs seek an order barring any enforcement of the statute pending trial, yet they do not and cannot contend that it lacks any legitimate sweep. The significance of the harm that could result from the improper issuance of an injunction would be substantial. "The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave," and those costs would impact both "members of the public" and "the Government which is tasked with managing handgun violence." *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016).

Preliminary relief should also be denied because Plaintiffs effectively seek to litigate the merits of the dispute without a motion for summary judgment or trial. "[C]ourts generally disfavor preliminary injunctive relief that is identical to the ultimate relief sought in the case." *See Progressive Democrats for Soc. Just. v. Bonta*, No. 21-CV-03875-HSG, 2021 WL 6496784,

18

at *11 (N.D. Cal. July 16, 2021); *see also Hennessy-Waller v. Snyder*, 529 F. Supp. 3d 1031, 1046 (D. Ariz. 2021), *aff'd sub nom. Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022). Plaintiffs seek in their motion the same relief they seek to obtain after summary judgment or a trial, weighing heavily against issuance of a preliminary injunction.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' motion for preliminary injunction.

Dated: November 4, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General


*/s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Defendant Attorney General
Rob Bonta, in his official capacity*

SA2022303468
36694711.docx