1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  SAFARI CLUB INTERNATIONAL, et al.,          No.  2:22-cv-01395-DAD-JDP

12              Plaintiffs,

13        v.                                     ORDER DENYING PLAINTIFFS' MOTION
                                                 FOR JUDGMENT ON THE PLEADINGS
14  ROB BONTA, in his official capacity as
    Attorney General of the State of California,  (Doc. No. 43)
15
                Defendant.
16

17

18        This matter is before the court on plaintiffs' motion for judgment on the pleadings.  (Doc.

19  No. 43.)  On December 2, 2024, the motion was taken under submission on the papers.  (Doc. No.

20  49.)  For the reasons explained below, the court will deny plaintiffs' motion.

21                                   **BACKGROUND**

22        Plaintiffs, three sportsmen advocacy organizations, bring constitutional challenges to a

23  California statute that prohibits firearm industry members from advertising or marketing firearm-

24  related products in a manner that is designed, intended, or reasonably appears to be attractive to

25  minors and from using personal information of minors for the purpose of advertising or marketing

26  firearm-related products to them.  *See* Cal. Bus. & Prof. Code § 22949.80(a)(1) ("A firearm

27  industry member shall not advertise, market, or arrange for placement of an advertising or

28  marketing communication offering or promoting any firearm-related product in a manner that is

                                            1

1  designed, intended, or reasonably appears to be attractive to minors."); *id*. § 22949.80(b) ("A

2  firearm industry member publishing material directed to minors in this state or who has actual

3  knowledge that a minor in this state is using or receiving its material, shall not knowingly use,

4  disclose, compile, or allow a third party to use, disclose, or compile, the personal information of

5  that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of

6  marketing or advertising to that minor any firearm-related product.").

7       On August 5, 2022, plaintiffs initiated this action against defendant seeking an order

8  declaring § 22949.80 unconstitutional, on its face and as applied to them, and enjoining its

9  enforcement. (Doc. No. 1 at ¶ 2.)  On October 18, 2022, plaintiffs filed their operative first

10 amended complaint ("FAC"), asserting claims for:  (1) violation of their right to freedom of

11 speech under the First Amendment; (2) violation of the right to commercial speech under the First

12 Amendment; (3) violation of their rights to association and assembly under the First Amendment;

13 (4) violation of the overbreadth doctrine under the First Amendment; (5) violation of the Fifth and

14 Fourteenth Amendments because the provision is void for vagueness; and (6) violation of the

15 Equal Protection Clause under the Fourteenth Amendment.  (Doc. No. 12 at ¶¶ 98–176.)

16      On October 21, 2022, plaintiffs filed a motion for a preliminary injunction seeking to

17 enjoin the enforcement of § 22949.80.  (Doc. No. 13.)  On January 12, 2023, this court issued an

18 order denying plaintiffs' motion for preliminary injunction.  (Doc. No. 23.)  On February 10,

19 2023, plaintiffs appealed the court's denial of their motion for a preliminary injunction to the

20 Ninth Circuit.  (Doc. No. 25.)  On September 22, 2023, the Ninth Circuit reversed and remanded

21 for further proceedings.[1]  (Doc. No. 30.)  On February 28, 2024, the Ninth Circuit issued its

22 mandate.  (Doc. No. 31.)

23      On March 20, 2024, the parties filed a joint status report and attached a proposed order

24 granting plaintiffs' motion for preliminary injunction.  (Doc. Nos. 32, 32-1.)  On April 12, 2024,

25 the court signed the parties' proposed order granting the preliminary injunction.  (Doc. No. 33.)

26

27 [1]  In its memorandum decision the Ninth Circuit stated:  "For the reasons outlined in *Junior Sports Magazines v. Bonta*, No. 22-56090 (9th Cir. Sept. 13, 2023), we reverse the denial of preliminary injunction and remand for further proceedings consistent with that opinion."  (Doc.

28 No. 30 at 1–2.)

1    The order preliminarily enjoined defendant "from enforcing California Business & Professions

2    Code § 22949.80." (*Id.* at 2.)  On May 15, 2024, defendant filed a motion to clarify the

3    preliminary injunction, seeking an order from the court that the preliminary injunction issued

4    applied only to California Business and Professions Code § 22949.80, subdivision (a).  (Doc. No.

5    35 at 4.)  On June 25, 2024, defendant filed a notice of supplemental authority notifying the court

6    of a decision in *Junior Sports Magazines v. Bonta*, No. 2:22-cv-04663-CAS-JC, wherein United

7    States District Judge Christina A. Snyder, upon remand from the Ninth Circuit, granted a

8    preliminary injunction enjoining enforcement of California Business and Professions Code

9    § 22949.80, subdivision (a), but denying the plaintiffs' motion to enjoin enforcement of

10   § 22949.80 in its entirety.  (Doc. No. 38 at 15–16.)  On June 28, 2024, the plaintiffs in *Junior*

11   *Sports* appealed from that decision to the Ninth Circuit Court of Appeals.  (*Junior Sports*

12   *Magazines*, Doc. No. 70.)

13          On October 16, 2024, plaintiffs in this case filed the pending motion for judgment on the

14   pleadings as to their first two claims, seeking a declaration from the court that § 22949.90 violates

15   the First Amendment and an order permanently enjoining enforcement of that statute.  (Doc. No.

16   43.)

17          On November 5, 2024, the court granted defendant's motion to clarify the injunction and

18   issued an order stating that the preliminary injunction entered on April 12, 2024 in this case

19   enjoined enforcement only of California Business and Professions Code § 22949.80(a), noting

20   that the court broadly "agrees with Judge Snyder's analysis in *Junior Sports* that California

21   Business and Professions Code § 22949.80(b) proscribes different conduct than subsection (a)

22   and does not fall within the scope of the Ninth Circuit's analysis of the constitutionality of

23   subsection (a) in *Junior Sports*."  (Doc. No. 46 at 5–6.)

24          On November 6, 2024, defendant filed his opposition to plaintiffs' motion for judgment

25   on the pleadings, arguing that plaintiffs are not entitled to judgment in their favor.  (Doc. No. 47.)

26   Therein, defendant also argued that this court should defer ruling on plaintiffs' motion for

27   judgment on the pleadings until the Ninth Circuit rules on the second appeal in *Junior Sports*.

28   (*Id.*)  On November 27, 2024, plaintiffs filed their reply thereto.  (Doc. No. 48.)

1    On July 8, 2025, plaintiffs filed a notice of supplemental authority alerting the court to the

2    Ninth Circuit's memorandum decision in *Junior Sports Magazines Inc. v. Bonta*, No. 24-4050

3    (9th Cir. July 7, 2025) and included additional argument in support of their pending motion for

4    judgment on the pleadings in light of that decision by the Ninth Circuit.[2]  (Doc. No. 50.)  The

5    court ordered defendant to respond (Doc. No. 51); on August 22, 2025, defendant filed a response

6    (Doc. No. 54), and on August 29, 2025, plaintiffs filed a reply thereto (Doc. No. 55).

7                                        **LEGAL STANDARD**

8    Federal Rule of Civil Procedure 12(c) provides that:  "After the pleadings are closed—but

9    early enough not to delay trial—a party may move for judgment on the pleadings."  A motion for

10   judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings[.]"

11   *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x

12   734 (9th Cir. 2008).

13   The same legal standards governing a Rule 12(b)(6) motion are applicable to a motion

14   brought under Rule 12(c).  *See Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir.

15   1989).  Accordingly, "judgment on the pleadings is properly granted when, taking all the

16   allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment

17   as a matter of law."  *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir.

18   2012) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also*

19   *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (stating that "judgment on the pleadings is

20   properly granted when there is no issue of material fact in dispute, and the moving party is

21   entitled to judgment as a matter of law").  "For purposes of the motion, the allegations of the non-

22   moving party must be accepted as true, while the allegations of the moving party which have been

23   denied are assumed to be false."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

24   1542, 1550 (9th Cir. 1989).  The facts are viewed in the light most favorable to the non-moving

25   /////

---

26   [2]  In that decision, the Ninth Circuit panel reversed the district court once again, "clarify[ing] that
27   [their] constitutional analysis applied to the entirety of Section 22949.80" and "remand[ing] with
     instructions to issue a preliminary injunction against the enforcement of the entirety of Cal. Bus.
28   & Prof. Code § 22949.80."  (Doc. No. 50-1 at 3, 9.)

1  party and all reasonable inferences are drawn in favor of that party.  *See Living Designs, Inc. v.*

2  *E.I. DuPont de Nemours & Co*., 431 F.3d 353, 360 (9th Cir. 2005).

3                                              **ANALYSIS**

4        In their pending motion for judgment on the pleadings, plaintiffs argue that they are

5  entitled to judgment in their favor as to their first and second claims because "the Ninth Circuit in

6  *Junior Sports* [] agreed Section 22949.80 likely violates the First Amendment" and "[t]here is no

7  additional evidence that would save this flagrantly unconstitutional statute."  (Doc. No. 43 at 8.)

8  In opposition, defendant argues that plaintiffs are not entitled to judgment on the pleadings for

9  two reasons.  (Doc. No. 47 at 2.)  First, defendant contends that plaintiffs have failed to show that

10  there are no issues of material fact that prevent judgment from being entered at the pleading stage.

11  (*Id*. at 12–13.)  Second, defendant argues that plaintiffs are not entitled to judgment in their favor

12  at this time because the FAC fails to allege facts sufficient to state a claim that subdivision (b) of

13  § 22949.80 violates the First Amendment, let alone that that subsection is unconstitutional as a

14  matter of law.  (*Id*. at 13–17.)

15        Following the Ninth Circuit's order in *Junior Sports* dated July 7, 2025, which held that

16  the district court abused its discretion by enjoining only § 22949.80(a) and not also subdivision

17  (b), defendant conceded in his responsive brief that "the Ninth Circuit has now held that all of

18  section 22949.80 likely violates the First Amendment, at least for purposes of a preliminary

19  injunction," but continues to maintain his first argument that the granting of judgment on the

20  pleadings is not appropriate because defendant's answer raises disputed issues of material fact.

21  (Doc. No. 54 at 3.)  In particular, defendant observes that while plaintiffs' FAC contains

22  allegations supporting their Article III standing to bring this action, in his answer defendant

23  denies those allegations.  (*Id*.)  Defendant argues that because the allegations of his answer must

24  be accepted as true, the denials of plaintiffs' allegations with respect to standing are sufficient to

25  evidence disputes of material fact precluding the granting of judgment on the pleadings in favor

26  of plaintiffs.  (*Id*.)

27        In reply, plaintiffs argue that defendant's assertion that purported factual disputes

28  concerning standing prevent the entry of judgment on the pleadings fails for three reasons.  (Doc.

No. 55 at 3.)  First, plaintiffs argue that the denials in defendant's answer are "boilerplate" and do not create triable issues of fact because plaintiffs submitted "undisputed declarations establishing each organization's concrete and imminent injuries" in conjunction with their motion for preliminary injunction, which defendant has never challenged.  (*Id*. at 3–4.)  Second, plaintiffs argue that "even if standing were in question," plaintiffs can bring a facial challenge to § 22949.80 without meeting the traditional injury in fact requirement.  (*Id*. at 4.)  Finally, plaintiffs argue that the allegations that defendant denied in his answer "are not relevant to the determination of the applicable First Amendment standard and whether Section 22949.80 violates it."  (*Id*.)  The court will first review the relevant allegations of plaintiffs' FAC and defendant's answer thereto and then address each argument below.

**A.      The Allegations**

The relevant allegations of plaintiffs' FAC are as follows:

> 81. Plaintiffs regularly "advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting . . . firearm-related product[s] in a manner that is designed, intended, or [might] reasonably appear[] to be attractive to minors."  Cal. Bus. & Prof. Code § 22949.80(a)(1).

> 82. Plaintiffs plan, advertise, market, promote, sponsor, host, and/or facilitate lawful events, competitions, trainings, educational programs, safety courses, and/or gun shows, specifically for youth or where youth are likely to be in attendance and where youth lawfully use, handle, observe, and/or otherwise possess firearms, ammunition, and/or firearm parts.

> 83. In addition, Plaintiffs widely distribute printed and electronic communications promoting their events and programs.  Such communications regularly include images and/or depictions of minors handling or "using firearm-related products."

> 84. Plaintiffs also sell space for traditional advertising concerning firearm-related products that California law allows minors to use and possess, and those advertisements often appear near content that is directed at youths.

> 85. Plaintiffs' lawful activities regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors exercising, or otherwise encouraging minors to exercise, their Second Amendment right to possess and use lawful firearms for lawful purposes.  Plaintiffs also sell and provide branded merchandise featuring caricatures and cartoons—many of which may appeal to youths and adults—to

promote their organizations, solicit membership and other support, and promote pro-Second Amendment messages and ideas.

86. Plaintiffs' lawful activities also sometimes include vendors or exhibitors who, among other things:  Promote membership or financial support of their organization; sell or distribute branded merchandise or merchandise with pro-firearm slogans and other political messages; disseminate books, pamphlets, coloring books, flyers, and other communications promoting the use of firearms and related products generally, hunting with firearms, the Second Amendment, firearm safety, and recreational or competitive shooting programs; or sell or advertise for sale firearms and related products and services.

87. Plaintiffs desire to advertise, market, or arrange for placement of advertising or marketing communications offering or promoting firearm-related products that on their face would violate Section 22949.80, specifically advertising and marketing communications that are intended to encourage minors to exercise their Second Amendment right to possess and use lawful firearms for lawful purposes.

88. Although Plaintiffs believe the provisions of Section 22949.80 that prohibit Plaintiffs from advertising or marketing firearm-related products in a manner that may be attractive to minors are unconstitutional on their face, Plaintiffs fear that engaging in such advertising or marketing communications will result in enforcement actions against Plaintiffs by Defendant, and/or expose Plaintiffs to liability in private civil actions authorized by Section 22949.80, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities.

89.  Plaintiffs also desire to advertise, market, or arrange for placement of advertising or marketing communications offering or promoting firearm-related products where it is unclear whether the communications violate the prohibitions of Section 22949.80.

90. Although Plaintiffs believe that Section 22949.80, on its face and as applied, unconstitutionally fails to provide persons of ordinary intelligence adequate notice of what conduct is proscribed, Plaintiffs fear that engaging in any advertising or marketing communications where it is unclear whether the communications violate Section 22949.80 will result in enforcement actions against Plaintiffs by Defendant, and/or expose Plaintiffs to liability in private civil actions authorized by Section 22949.80, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities. Even if lacking merit, these civil actions could devastate Plaintiffs financially because the statute only provides for an award of fees and costs to prevailing plaintiffs.

91. Section 22949.80 thus has the practical effect of wiping out a vital outlet for the free exchange of ideas related to the lawful possession and use of lawful "firearm-related products" and for the

promotion and preservation of the nation's historical tradition of firearms ownership and hunting heritage in California through the passing down of pro-Second Amendment attitudes and traditions to future generations.

92. Indeed, as evidenced both on the face of Section 22949.80 and by the legislative history of AB 2571, this appears to be the purpose and intent of the law.

93. For example, the Senate Judiciary Committee's June 10, 2022, "Bill Analysis of AB 2571" quotes heavily from the Violence Policy Center's ("VPC") 2016 report, "Start Them Young," which disparagingly "outlines the problem" of the "gun industry's" attempts to "attract future legal gun owners" as follows:

The gun industry has long understood that it faces a slow-motion demographic collapse.  With the industry's customer base growing older, household gun ownership in America has steadily declined.  As its primary market of white males ages and dies off, the firearms industry has set its sights on America's children.  Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products.  Firearms companies have teamed up with "corporate partners" like the National Rifle Association of America, the gun industry's trade association the National Shooting Sports Foundation (NSSF), and online public-cations such as Junior Shooters in an industry-wide effort to market firearms to kids.  They do this by promoting websites and magazines targeted at children, designing "kid-friendly" guns to appeal to the youth market, and even working to create the equivalent of "'reality' video" games to encourage gun use from an early age.  The industry's focus on recruiting children into the gun culture has been acknowledged since at least the 1990s.

94. The Senate Judiciary Committee's analysis continues, quoting a New York Times article lauding the VPC report:

The gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles.  And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age.

The report, called "Start Them Young" and issued on Thursday by the Violence Policy Center, lists a variety of firearms meant at least partly for children.  It mentions the Crickett rifle, a gun made for children by the company Keystone Sporting Arms.  Keystone's website and some of its merchandise bear the image of "Davey Crickett," a gun-wielding cartoon insect.  The company sells Davey Crickett hats, dog tags and pins, as well as a Davey Crickett Beanie Baby, listed as "not for children under three years of age."

Keystone's website also sells books featuring "Little Jake," a boy who uses his gun to bring down a bear and save an African village from a marauding elephant.  The publisher of the books says Little Jake is actually older than he looks:  "Little Jake is a fictional character in his late teens.  While small in stature so that young

children may relate to him, Little Jake is old enough to hunt and fish safely on his own without adult supervision."

95. It is thus clear that the California Legislature, in enacting AB 2571, understood the importance of engaging youth in hunting and the shooting sports for the preservation of the nation's historical tradition of firearms ownership and, in fact, intended AB 2571 to serve as a barrier to, and to chill, constitutionally protected conduct. The intent of AB 2571, as evidenced by the legislative record, is not to keep unlawful firearms out of the hands of minors or to prevent unlawful use of firearms, but rather to prevent "firearm industry members"—which, as defined, necessarily include pro-Second Amendment organizations, hunting conservation organizations, and youth shooting programs—from "indoctrinating" youth to become "advocates" for the Second Amendment and "gun culture."

96. Likewise, shortly after signing AB 2571 into law, Governor Newsom—the source of AB 2571, *see* Sen. Rules Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan), 2021-2022 Reg. Sess., at 1 (Cal. 2022)—posted to his official Twitter account a videotaped message to "the members of the United States Supreme Court" and to "right-wing Republicans across this country," asking rhetorically:

Do you have no common decency, respect, or even common understanding that kids should not have one of these [referring to a semi-automatic rifle in his hands]? This is an AR-15. This is a weapon of war. A weapon of mass destruction. But you're out there promoting and allowing marketing of these weapons of war to our kids. Supporting and celebrating gun manufacturers who put up advertisements like the ones you see behind me. These are cartoon skulls will pacifiers in them. His and her pacifiers. Cartoon skulls of children with pacifiers. *That is what the right wing is marketing and promoting* at behest of the gun industry in this country. The good news, if there's any, is that this ends at least today in California. I just signed a bill, so the gun industry *and those that are backing this industry* can no longer market to our children. The idea that we even have to do this is ridiculous. This law, by the way, goes into effect immediately. Because *decent human beings, people with common sense, know that we should not be allowing this kind of disgusting marketing to go on another day.*

97. Accordingly, there is an actual, practical, and present need for declaratory and injunctive relief to ensure there is a clear determination of law that will resolve these disputes in a uniform manner and avert the potential imposition of improper and unconstitutional enforcement actions against Plaintiffs by Defendant, or civil actions against Plaintiffs by private parties, for allegedly violating the unconstitutional provisions of Section 22949.80. As described above, Plaintiffs have declined to engage in certain advertising and marketing communications out of fear that engaging in such communications will result in enforcement and/or private civil actions against Plaintiffs, subjecting Plaintiffs to substantial monetary penalties and other liabilities that could jeopardize Plaintiffs' businesses and other lawful activities.

9

1
2

> Plaintiffs have no adequate remedies at law and there is a present
> and immediate need for declaratory and injunctive relief.

3    (Doc. No. 12 at 28.)

4        In response to practically all of these allegations, defendant states in his answer that he

5    "lacks knowledge or information sufficient to form a belief as to the truth of the allegations and,

6    therefore, denies them."  (Doc. No. 16 at 12–14.)[3]

7    **B.     The Boilerplate Nature of the Denials and Plaintiffs' Declarations**

8        Plaintiffs argue that defendant's "boilerplate denials of allegations 'for lack of knowledge

9    or belief'" do not create a triable issue that prevents judgment on the pleadings.  (Doc. No. 55 at

10   3.)  Defendant disagrees, noting that as the non-moving party, his denials must be accepted as true

11   at this stage of the litigation and "need not be supported with facts to defeat" plaintiffs' motion.

12   (Doc. No. 54 at 4) (citing *Rosen v. Hollywood Show, LLC*, No. 2:18-cv-00215-CAS-E, 2019 WL

13   4138658, at *2 (C.D. Cal. June 3, 2019) ("Plaintiff argues that he is entitled to judgment as a

14   matter of law because Hollywood Show did not support its denials with facts.  This argument fails

15   because a defendant does not bear the burden of disproving plaintiff's case at the pleading

16   stage.")).  Plaintiffs respond by arguing that "[s]uch bare denials do not create a triable issue"

17   here because they have already submitted declarations demonstrating their standing in support of

18   their motion for preliminary injunction, and defendant never challenged those declarations.  (Doc.

19   No. 55 at 3–4.)

20       As stated above, the same legal standards governing a Rule 12(b)(6) motion are applicable

21   to a motion brought under Rule 12(c).  *See Dworkin*, 867 F.2d at 1192.  "Rule 12(b)(6) and Rule

22   12(c) motions are generally confined to the four corners of the complaint and any materials it

23   incorporates, and a district court generally may not consider materials outside the pleadings."

24   *Focus 15, LLC v. NICO Corp.*, No. 21-cv-01493-EMC, 2022 WL 267441, at *6 (N.D. Cal. Jan.

25   28, 2022) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also*

26
27
28

---

[3]  To the extent the allegations of plaintiffs' FAC include a citation or quotation, defendant states in his answer that the cited "authority speaks for itself."  (Doc. No. 16 at 13–14.)  Defendant also notes in his answer that some paragraphs of plaintiffs' allegations described above "consist[] of legal argument and/or conclusions that do not require admission or denial."  (*Id.*)

1    *Broadcom Corp. v. Netflix Inc*., 677 F. Supp. 3d 1010, 1018 (N.D. Cal. 2023) ("Rule 12(b)(6) and

2    Rule 12(c) motions generally are confined to the four corners of the complaint, and any materials

3    it incorporates."); *Jackson v. Nev. Dep't of Corr*., No. 2:21-cv-01772-JAD-EJY, 2024 WL

4    3540585, at *2 (D. Nev. July 24, 2024) ("But motions for judgment on the pleadings under

5    Federal Rule of Civil Procedure 12(c) are generally confined to the four corners of the

6    complaint . . . ."). Plaintiffs have presented no argument that their FAC incorporates any of the

7    declarations they filed in support of their later motion for preliminary injunction. Accordingly,

8    the court cannot and does not consider those declarations in resolving the pending motion for

9    judgment on the pleadings and therefore rejects plaintiffs' argument that defendant's boilerplate

10    denials in his answer cannot raise an issue of material fact because of the evidence presented in

11    those declarations. *See Stekly v. I.Q. Data Int'l, Inc*., No. 25-cv-00216-ECT-DLM, 2025 WL

12    2374081, at *4 (D. Minn. Aug. 15, 2025) (denying the plaintiff's motion for partial judgment on

13    the pleadings, noting that whether the plaintiff has evidence that "casts doubt on the truth of" the

14    denials in the defendant's answer, and whether those denials "turn out to have been unsupported,

15    is beside the point" because "[i]n the context of a Rule 12(c) motion, they must be accepted as

16    true"); *CTM Holdings, LLC v. U.S. Dep't of Agric.*, No. 24-cv-02016-CJW-MAR, 2024 WL

17    5699963, at *2–3 (N.D. Iowa Dec. 6, 2024) (finding that "this case is not appropriate to decide on

18    a plaintiff's motion for judgment on the pleadings" because the defendant's answer contained

19    boilerplate denials of "almost every fact in [the] plaintiff's 'injury' section of the complaint"

20    which, "if taken as true, would lead to the conclusion that [the] plaintiff has suffered, or will

21    imminently suffer, no injury" and lacks standing).

22    **C.**      **The Injury in Fact Requirement**

23        As noted above, plaintiffs also argue that even if their standing is "in question," "it is

24    axiomatic that 'a plaintiff whose constitutional rights have not been violated may nevertheless

25    bring a facial challenge to a law that implicates the First Amendment without meeting the

26    traditional injury in fact requirement.'" (Doc. No. 55 at 4) (quoting *Kumar v. Koester*, 683 F.

27    Supp. 3d 1108, 1114 (C.D. Cal. 2023), *aff'd and remanded*, 131 F.4th 746 (9th Cir. 2025)).

28    Plaintiffs contend that their "facial challenge is justiciable without individualized evidence of

1 enforcement." (Doc. No. 55 at 4) (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 415–17

2 (2015)).

3     The argument advanced by plaintiffs in this regard is, however, inapposite because

4 defendant has not suggested that plaintiffs failed to allege that they suffered an injury by way of

5 enforcement of § 22949.80. Instructive here is the following observation by the district court in

6 *Kumar*:

7
> A plaintiff whose constitutional rights have not been violated may
> nevertheless bring a facial challenge to a law that implicates the
8 > First Amendment without meeting the traditional injury in fact
> requirement. *Tennison v. Paulus*, 144 F.3d 1285, 1287 (9th Cir.
9 > 1998). Under this relaxed standard, a plaintiff has suffered an
> injury sufficient to establish standing if he argues that a policy
10 > burdens protected First Amendment activity. *See Real v. City of
> Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (holding that an
11 > artist had standing to bring a First Amendment facial challenge to a
> zoning ordinance by simply asserting that the ordinance restricted a
12 > protected activity). However, "the mere existence of a proscriptive
> statute" is insufficient to assert a justiciable claim. *Thomas*, 220
13 > F.3d at 1139. Instead, to establish standing, a plaintiff must have a
> "concrete plan" to violate the relevant law or face a credible threat
14 > of enforcement for its violation. *Id.* This relaxed standard for
> asserting a justiciable injury in fact also applies to due process
15 > challenges implicating First Amendment interests. *Arce v.
> Douglas*, 793 F.3d 968, 987–88 (9th Cir. 2015).
16

17 *Kumar*, 683 F. Supp. 3d at 1114.

18     In *Kumar*, the district court was not suggesting that a plaintiff can bring a facial challenge

19 to a statute without establishing standing. The court was instead discussing how a plaintiff may

20 establish standing by demonstrating a concrete plan to violate the statute in question or a credible

21 threat of prosecution for violation of that statute, rather than being required to first violate the

22 statute and suffer an actual injury through the resulting consequences. Plaintiffs' allegations

23 regarding a credible threat of enforcement and a burden on their protected activities are the exact

24 allegations at issue here. As detailed above, plaintiffs allege that they regularly participate in the

25 advertising and marketing activities prohibited by § 22949.80 and describe what those activities

26 are, allege that they fear that engaging in those activities will result in enforcement actions, and

27 allege that they have thus declined to engage in those activities due to that fear. (Doc. No. 14 at

28 ¶¶ 81–97.) Defendant denies those allegations for lack of knowledge or insufficient information.

(Doc. No. 16 at ¶¶ 81–97.)  Contrary to plaintiffs' suggestion, defendant does not argue that plaintiffs should have alleged facts sufficient to meet a higher threshold for standing, such as facts suggesting that plaintiffs did indeed engage in certain advertising and marketing activities and are now facing enforcement actions under § 22949.80.  Accordingly, the court is also not persuaded that the general denials in defendant's answer are somehow negligible or should be disregarded because plaintiffs need not meet the traditional injury in fact requirement for standing.

**D.    The Merits**

Finally, plaintiffs argue that the denials in defendant's answer are irrelevant because they are "immaterial to the merits question of whether Section 22949.80, on its face, violates the First Amendment" and "the Ninth Circuit held the statute unconstitutional *assuming* that Plaintiffs' speech is commercial, not because of any fact-specific application."  (Doc. No. 55 at 4.)  Plaintiffs explain that "the allegations necessary to resolve the legal question of whether Section 22949.80 violates the First Amendment are not in dispute."  (Doc. No. 48 at 7.)

The court again observes that this argument evades the issue that defendant has raised here.  While the Ninth Circuit held in *Junior Sports* that § 22949.80 is likely unconstitutional under the First Amendment and remanded with instructions to issue a preliminary injunction against the enforcement of that statute in its entirety, the plaintiffs in this case are now seeking entry of judgment in their favor under Rule 12(c), which requires there to be "no issue of material fact in dispute."  *Fleming*, 581 F.3d at 925.  Plaintiffs present no authority suggesting that the court should reach the merits of their motion as a matter of law despite the presence of disputed allegations as to plaintiffs' standing, and the court's own research suggests otherwise.  *See CTM Holdings, LLC*, 2024 WL 5699963, at *2 ("At base, defendants' denials, if taken as true, would lead to the conclusion that plaintiff has suffered, or will imminently suffer, no injury.  Of course, if plaintiff does not have any injury, it would not have standing.  If plaintiff does not have standing, then the Court cannot grant judgment on the pleadings in favor of plaintiff.  Thus, based upon the way in which the Court must view the facts for the purposes of this motion, the Court cannot grant plaintiff's motion because of outstanding factual disputes.  The Court, therefore, does not reach the parties' legal arguments.")  Accordingly, the court concludes that it cannot,

13

under the legal framework of a Rule 12(c) motion, grant judgment in favor of plaintiffs at this time given the dispute that defendant has identified, even if defendant's general denials can ultimately be disproven by plaintiffs. *See Rosen*, 2019 WL 4138658, at *2 ("Plaintiff's motion for judgment on the pleadings fails because Hollywood Show denied several material allegations in its answer and those denials must be accepted as true. Thus, it cannot be said that only questions of law remain."); *see also Stekly*, 2025 WL 2374081, at *3 (denying the defendant's motion for judgment on the pleadings, noting: "I.Q. plausibly denied that Ms. Stekly suffered an Article III-worthy injury. In the Rule 12(c) context, granting Ms. Stekly's motion would require a once-and-for-all conclusion that she suffered Article III-worthy injuries in connection with each of the two at-issue claims."). Plaintiffs' motion for judgment on the pleadings must therefore be denied. *See Am. All. for Equal Rts. v. Ivey*, No. 2:24-cv-00104-RAH, 2024 WL 3463347, at *4 (M.D. Ala. July 17, 2024) ("Because both the Governor and Brokers Association denied factual allegations about Ms. Clark that are critical to the Alliance's standing (and therefore critical to the outcome of the case), they have disputed material facts. Judgment on the pleadings must be denied.").

**E.    Next Steps in the Litigation**

Plaintiffs suggest that if the court does find that the denials in defendant's answer raise material factual issues, the court should convert this motion and set a briefing schedule as to summary judgment proceedings. (Doc. No. 48 at 7.) Defendant, on the other hand, suggests that "this case may benefit from the parties engaging in discussion about potential resolution of this matter, rather than further litigation." (Doc. No. 54 at 4.) Accordingly, the court will set this matter for Initial Scheduling Conference on November 24, 2025. The parties shall file a joint status report by November 10, 2025, addressing the scheduling of the case or otherwise indicating how they prefer this matter to now proceed.

## CONCLUSION

For the reasons set forth above,

1.    Plaintiffs' motion for judgment on the pleadings (Doc. No. 43) is DENIED; and

/////

2. This matter is hereby SET for Initial Scheduling Conference on November 24, 2025 at 1:30 p.m. before District Judge Dale A. Drozd via Zoom.

IT IS SO ORDERED.

Dated:  **September 29, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE